CHATTANOOGA–HAMILTON COUNTY
HOSPITAL AUTHORITY and Attorney
General for the State of Tennessee

v.

CITY OF CHATTANOOGA et al.

Supreme Court of Tennessee.

April 23, 1979.

Alvin O. Moore, Spears, Moore, Rebman & Williams, John P. Gaither, Witt, Gaither & Whitaker, Chattanooga, William M. Leech, Jr., Atty. Gen., Everett H. Falk, Deputy Atty. Gen., Nashville, for petitioners.

John C. Stophel, Stophel, Caldwell & Heggie, Chattanooga, filed brief amicus curiae, for Chattanooga Opthalmological Foundation.

Eugene N. Collins, City Atty., W. Lee Maddux, Sp. Counsel, John T. Henniss, County Atty., Howell G. Clements, Grant & Clements, P. A., Chattanooga, for respondents.

## OPINION

FONES, Justice.

This suit involves challenges to the constitutionality of two private acts establishing the Chattanooga-Hamilton County Hospital Authority (hereinafter the "Hospital Authority"), 1976 Tenn.Priv.Acts ch. 297, *as amended by* 1977 Tenn.Priv.Acts ch. 125.

In substance, the 1976 Act created the Hospital Authority to operate Baroness Erlanger Hospital, T. C. Thompson Children's Hospital and other health facilities in order to provide consolidated health services to the residents of both Chattanooga and Hamilton County.

The 1977 Act expressly ratified and amended the former Act and, in more elaborate details, provided for the powers, duties and financial operation of the Hospital Authority. The 1976 Act was passed pursuant to article XI, § 9, para. 9 of the Tennessee Constitution, which allows the General Assembly to provide for the consolidation of any or all governmental and corporate functions of municipal corporations with the counties in which the city is located only upon referendums in "home rule" municipalities.[1]

A county-wide referendum on August 5, 1976, approved the 1976 Act. The 1977 Act provided for, and received, the approval of the county council of Hamilton County by a two-thirds vote.

The City and County refused to convey the hospital properties, as required by the Acts, on the grounds, *inter alia*, that the private Acts were adopted in contravention to the "home rule" amendment to the Tennessee Constitution. Tenn.Const. art. XI, § 9. Subsequently the Hospital Authority sued the City and County pursuant to T.R.C.P. 57 and T.C.A. § 23–1101, *et seq.*, seeking a declaratory judgment that the Acts were constitutional and an order directing the conveyance of the hospital properties. The trial court granted the requested relief, but on appeal the intermediate court held the Acts unconstitutional as violative of article XI, § 9 and article II, § 17 of the State Constitution, dealing, respectively, with consolidations of government functions in "home rule" municipalities and the constitutional requirements of a caption to a legislative act. Petitioners, the Hospital Authority and the Attorney General, contend that the Court of Appeals erred in sustaining these assignments of error, and we granted certiorari to address those issues.

Prior to 1976, a five-man board of trustees supervised the operation of the hospitals and health centers in controversy—the Baroness Erlanger Hospital, the T. C. Thompson Children's Hospital, the Alton Park Neighborhood Health Center and the Dodson Avenue Neighborhood Health Center. Two of the trustees were appointed by the Mayor of Chattanooga, two by the Hamilton County judge and one by the Hamilton County chancellors. The property on which the Erlanger and Thompson hospitals were located was held in fee simple by the City and County as tenants-in-common. Since 1966, a portion of the sales tax revenue was turned over to the County, which assumed the responsibility of financing the two hospitals. In addition, the City and County issued bonds when necessary. *See* Op.Att'y Gen. (July 7, 1977).

On March 11, 1976, the General Assembly passed House Bill No. 2394, 1976 Tenn.Priv. Acts ch. 297, which became law on March 30, 1976, after a pocket veto by the Governor. The Bill had the following caption:

AN ACT to create a Governmental Hospital Authority to own and operate Bar-

---

1. The City of Chattanooga became a "home rule" municipality in November 1972. In 1953 the "home rule" amendment was added to article XI, § 9 of the State Constitution and, in general, limits the power of the Legislature to enact special, local or private acts affecting particular municipalities and counties in their governmental or proprietary capacities. However, as an exception to this general rule, under article XI, § 9, para. 9, the General Assembly has the power to provide for consolidation of the governmental and corporate functions of a "home rule" municipality with those of the county in which the municipality is located, but before any such consolidation can become effective, local approval by the voters is required. *See* Op.Att'y Gen. (July 7, 1977).

oness Erlanger Hospital, T. C. Thompson Children's Hospital and other related facilities and provide for the establishment and organization of a Board of Trustees for the operation thereof.

The Bill consisted of sixteen sections, which, *passim*, provide for the creation of the Hospital Authority, the establishment of a board of trustees and a financial review committee, the conveyance of property from the City and County, authorization and regulation of the issuance of bonds and securities and a recitation that all private acts, city ordinances and county resolutions in conflict with the Act are superseded. Section fifteen of the Act called for the submission of the Act to qualified voters of Hamilton County for their vote of approval in a referendum. On August 5, 1976, such a referendum was conducted, and a majority of the voters approved the Act.

On May 19, 1977, the General Assembly passed Senate Bill No. 1499, 1977 Tenn.Priv. Acts ch. 125, which substantially revamped the 1976 Act and provided more details on the administrative operation of the newly-created Authority, its board of trustees and financial review committee. Section eighteen of the Act declared the authority to be "a public instrumentality acting on behalf of the county." Section two of the 1977 Act amended section two of the 1976 act to read:

> In the event the authority shall at any time cease to exist . . . the real estate which was owned on August 5, 1976, by the county and the city and conveyed to the authority by the county and the city, shall revert in fee simple to the county, subject to such encumbrances as may be on said property at the time of reversion; provided, however, that the city shall have an option to require transfer to it of the title to the same proportion of such real estate as was owned by the city on such date, subject to such encumbrances on that portion of the real estate.

Although other portions of the 1977 Act affected the powers, duties and operation of the Hospital Authority, it appears from the briefs submitted to this Court that the above features of the 1977 Act were at the core of the controversy that led to this lawsuit. Finally, section fourteen of the Act provided for submission and approval of the Act by a two-thirds vote of the Hamilton County Council.

In his memorandum, the trial judge held that the Acts establishing the Hospital Authority did not violate the Tennessee Constitution, art. XI, § 8, art. XI, § 9, art. XI, § 17, art. II, § 17, art. II, §§ 1, 2 and art. I, §§ 20, 21. The Court found the 1976 Act was a consolidation act within the meaning of the "home rule" amendment and the requirements of that amendment were satisfied by the August 1976 referendum. On the other hand, the trial court concluded, ". . . nothing in Chapter 125 . . . would operate as a further consolidation of governmental functions beyond those consolidated already by Chapter 297." The Court reasoned that since the 1977 Act "did not affect the City to any substantial degree," it did not require approval by the City. Additionally, relying on an opinion of the Attorney General dated July 7, 1977, the Court found that the City of Chattanooga did not lose its right of first refusal by virtue of the amendment set forth in section two of the 1977 Act. In summary, the Court found that the 1976 Act, which accomplished a consolidation, was effective under the "home rule" amendment and that "the primary thrust of Chapter 125 is directed at providing more detail concerning the Hospital Authority and its board of trustees, particularly with respect to financial matters."

The Court of Appeals addressed only two of the assignments of error cited by the defendants: (1) whether the caption to the 1976 Act was broader than its purview and (2) whether the approval of the 1977 Act by the County Council was a nullity because it should have required approval pursuant to the "home rule" amendment. Nevertheless, the Court of Appeals ruled that a consolidation was accomplished by the 1976 Act; presumably, therefore, in holding that the vote of the County Council was a nullity, it

viewed the 1977 Act as falling under the "home rule" amendment. We disagree. Additionally, we disagree with the intermediate court's holding that, "A review of the provisions of the 1976 Act already enumerated . . . makes it immediately obvious its purview is much broader than its caption."

█ It is fundamental that "[w]hen a constitutional attack is levied on a statute, we are required to indulge every presumption in favor of its validity and resolve any doubt in favor of, rather than against, the constitutionality of the [a]ct." *Dorrier v. Dark*, 537 S.W.2d 888, 891 (Tenn.1976); *accord, Memphis Publishing Co. v. City of Memphis*, 513 S.W.2d 511, 513 (Tenn.1974); *Black v. Wilson*, 182 Tenn. 623, 630, 188 S.W.2d 609, 612 (1945); *see* 16 Am.Jur.2d *Constitutional Law* § 137 (1964).

█ Article II, § 17 of the Tennessee Constitution provides in pertinent part:

. . . No bill shall become a law which embraces more than one subject, that subject to be expressed in the title. All acts which repeal, revive or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed, revived or amended.

Consistent with the fundamental rule that every legislative act is presumed to be constitutional, this Court will presume that the caption adequately expresses the subject of the body of an act and avoid a technical or narrow construction of the caption in order to exclude portions of an act. *See, e. g., Memphis St. Ry. Co. v. Byrne*, 119 Tenn. 278, 287–88, 104 S.W. 460, 462 (1907); *see generally* Sutherland, 1A Statutory Construction § 18.05 (4th ed. Sands 1972); 73 Am.Jur.2d *Statutes* §§ 102–18 (1974).

█ Various tests have been enunciated in our case law concerning the proper construction of this section of the Constitution. In *Cannon v. Mathes*, 55 Tenn. 504, 523 (1872), this Court, after holding that constitutional provision to be mandatory and not directive, held:

It is obvious, therefore, that the true rule of the construction, as fully established by the authorities, is, that any provision of the act, *directly or indirectly relating to the subject expressed in the title*, and having a natural connection thereto, and not foreign thereto, should be held to be embraced in it. Following this rule, we hold that in the case before us, the fourth section of the act, fixing the tax on privileges, has a *natural connection with the subject* expressed in the title of the act, and that the same is constitutional and valid. (emphasis supplied.)

This test has been paraphrased in other cases as follows: "So long as the *subject matter of the act is germane* to that expressed in the title, it is free from the objection that the body of the act is broader than its caption." *Southern Photo & Blue Print Co. v. Gore*, 173 Tenn. 69, 74, 114 S.W.2d 796, 798 (1938) (emphasis supplied); *accord, Dorrier v. Dark, supra; Cosmopolitan Life Ins. Co. v. Northington*, 201 Tenn. 541, 300 S.W.2d 911 (1957); *Witt v. McCanless*, 200 Tenn. 360, 292 S.W.2d 392 (1956); *Armistead v. Karsch*, 192 Tenn. 137, 237 S.W.2d 960 (1951); *Louisville & Nashville R. Co. v. Hammer*, 191 Tenn. 700, 236 S.W.2d 971 (1951); *Tennessee Elec. Power Co. v. Mayor & Aldermen of Town of Fayetteville*, 173 Tenn. 111, 114 S.W.2d 811 (1938); *Armstrong v. City of South Fulton*, 169 Tenn. 54, 82 S.W.2d 862 (1935); *see also* Sutherland, *supra* § 17.03 ("reasonably germane" test adopted in other jurisdictions with similar constitutional provisions). As a corollary to the above test, it also has been recognized that the "subject" of an act, which must be expressed in the caption pursuant to article II, § 17, does not embrace the means or instrumentalities for accomplishing the purpose of the act. *See, e. g., Woods v. Phillips*, 558 S.W.2d 825, 829–30 (1977); *Dorrier v. Dark, supra; Davis v. Hailey*, 143 Tenn. 247, 252, 227 S.W. 1021, 1022 (1920).

█ Hence, it is well established, given the presumption in favor of the constitutionality of a caption, it need only serve "to assure that members of the Legislature and the *public* be given notice of legislative proposals and to prevent surprise and fraud

in enactments." *Farris v. State,* 535 S.W.2d 608, 610 (Tenn.1976); *accord, State v. Hailey,* 505 S.W.2d 712, 714 (Tenn.1974).

An item-by-item analysis of the body of the 1976 Act leads us to conclude that the letter and spirit of article II, § 17, have been satisfied. The gist of the Act was the establishment of the Hospital Authority, with an accompanying recitation of its powers, duties and operation through its board of trustees and financial review committee. The purpose of the caption rule is to prevent legislative *logrolling* and not to provide a yardstick by which to measure the purview of an act. We think that the caption quoted *supra* adequately apprised the Legislature and public of the subject of the Act and that the body of the Act, in setting forth the means and instrumentalities for implementing the purpose, was reasonably germane to the caption.

Although neither the caption nor the body of the 1976 Act complied with article II, § 17, *requiring recitation of the specific acts superseded by its enactment,* this will not destroy the validity of the Act. The repealing provision of section 17 does not embrace an autonomous statute that repeals all prior acts by implication. In *Dorrier v. Dark,* 540 S.W.2d 658, 659 (Tenn. 1976), the Court held:

> It has long been the law in this State that it is not necessary to recite the title or substance of all prior laws which are affected by the positive provisions of a subsequent enactment. If there is an irreconcilable conflict in the two laws, the prior act is rendered inoperative. To require exhaustive research through the Code for inconsistent acts, would be a requirement of such difficulty as to be almost an impossibility and would constitute a barrier to effective legislation.

*Accord, Cheatham Co. v. Murff,* 176 Tenn. 93, 103, 138 S.W.2d 430, 433 (1940); *Home Ins. Co. v. Taxing Dist.,* 72 Tenn. 644, 649 (1880). It is obvious that the primary thrust of the 1976 Act was the autonomous establishment of the Hospital Authority, not the amendment of prior conflicting laws.

The Court of Appeals opined that the 1977 Act was not effective as an amendment to the 1976 Act because the latter, as subject to a consolidation referendum, could not be amended other than by a vote of the affected people. Thus, the issue is whether the General Assembly can amend a private act enacted pursuant to article XI, § 9 without resubmission of the amended version to the people for a referendatory vote.

Paragraph 9, § 9 of art. XI of the Tennessee Constitution provides:

> The General Assembly may provide for the consolidation of any or all of the governmental and corporate functions now or hereafter vested in municipal corporations with the governmental and corporate functions now or hereafter vested in the counties in which such municipal corporations are located; provided, such consolidations shall not become effective until submitted to the qualified voters residing within the municipal corporation and in the county outside thereof, and approved by a majority of those voting within the municipal corporation and by a majority of those voting in the county outside the municipal corporation.

By its express provisions, this part of the "home rule" section allows for legislatively effected consolidations upon the approval of the affected people. It is familiar law that we shall construe the constitutional provision as written and will not read any ambiguity into it. *E. g., Shelby County v. Hale,* 200 Tenn. 503, 292 S.W.2d 745 (1956). A referendatory vote is only required for acts that accomplish a consolidation, not for acts amending or repealing a consolidation. In *the absence of express language to the contrary,* therefore, we must find that a referendum was not required under this section to accomplish the purpose of the 1977 Act.

It appears that other jurisdictions are divided on this issue, but the better view is that the legislature and the electorate are co-ordinate legislative bodies, and in the absence of special constitutional or charter restraint, either may amend or repeal an enactment by the other. *See An-*

not., 33 A.L.R.2d 1118 § 2 (1954); 42 Am. Jur.2d *Initiative and Referendum* § 58 (1969); 82 C.J.S. *Statutes* § 150 (1953).

▆▆▆ The City further challenges the validity of the 1977 Act, contending that since the amending Act affects the City as well as the County, but only was approved by the County Council, it should have had City approval. The City predicates its contention on article XI, § 9, para. 2 which provides in pertinent part:

"... any act of the General Assembly private or local in form or effect applicable to a particular county or municipality either in its governmental or its proprietary capacity shall be void and of no effect unless the act by its terms requires the approval by a two-thirds vote of the local legislative body of the municipality or county, or requires approval in an election by a majority of those voting in said election in the municipality or county affected."

In *Doyle v. Metropolitan Gov't*, 225 Tenn. 496, 501, 471 S.W.2d 371, 373 (1971), we held that this section proscribes a private act "being made applicable to the municipality without the consent of the local legislative body or without an affirmative vote by the local electorate." It is clear, however, that the City is not substantially affected by the 1977 Act and hence their approval was not necessary to validate the Act. The essence of the 1977 Act was a more detailed catalogue of the duties, powers and operation of the Hospital Authority. Nevertheless, since several sections affect the County, such as section nineteen, which declared the Hospital Authority to be a "public instrumentality acting on behalf of the County," we feel there could be an obvious basis for requiring the approval of the Hamilton County Council pursuant to Article XI, § 9, para. 2.

The City also raises several other challenges to the Acts in question based upon the State Constitution. We find these so-called novel constitutional questions to be without merit. The City contends that the Court of Appeals erred in finding that the 1976 Act met the specific voting requirements of the consolidation paragraph of

article XI, § 9 because there was not a separate submission of the approval question to the City voters and to the County voters outside the City. However, both the trial court and the Court of Appeals found that a tabulation of the vote was made by each precinct which showed conclusively that there was approval given by the voters in the City and also by the voters in the County, and this concurrent factual finding disposes of the City's contention.

▆▆▆ The City argues that the 1976 Act did not create a "consolidation" and therefore was not subject to article XI, § 9, for the act actually "created" a Hospital Authority. We view this argument as based on a staid concept of "consolidation," for the obvious legislative intention was to provide for consolidated health services, irrespective of the instrumentalities involved. Additionally, the City contends that the method of appointment of the board of trustees of the Hospital Authority violates the separation of powers doctrine. We fail to see how the delegation of authority to a county judge and chancellors to make administrative appointments amounts to "any encroachment by one [department] upon the powers, [functions,] and prerogatives of [either of the others] ..." *Richardson v. Young*, 122 Tenn. 471, 491, 125 S.W. 664, 668 (1909). In *State ex rel. Llewellyn v. Knox Co.*, 165 Tenn. 319, 330, 54 S.W.2d 973, 976 (1932), *quoting from State v. Armstrong*, 35 Tenn. 634 (1856), the Court said:

"'But any power not legislative in character which the legislature may exercise it may delegate, and before a court can properly hold that a statute is void as unconstitutionally delegating legislative power, it must clearly appear that the power in question is purely legislative.'"

Similarly, although the Acts authorize the trustees to promulgate rules, regulations and policies of the hospital, such is not an unconstitutional delegation of legislative power in violation of article II, §§ 1, 2. *See West v. Tennessee Hous. Dev. Agency*, 512 S.W.2d 275, 281 (Tenn.1974).

▆▆▆ Next, the City contends that the selection process for members of the board

of trustees violates article XI, § 17, which provides:

"No County office created by the Legislature shall be filled otherwise than by the people or the County Court."

However, we find that the office of trustee of the Hospital Authority is not a county office under the above section, but rather an office of an independent governmental entity. *See Williams v. Cothron*, 199 Tenn. 618, 288 S.W.2d 698 (1956).

 Recognizing the presumption in favor of a statute's constitutionality, we have considered the other assignments of error raised by the City and do not find them to be meritorious. In *West v. Tennessee Hous. Dev. Agency, supra*, we considered constitutional challenges based on article XI, § 8, and reiterated the view that, " ' "The constitutional provision that 'No corporation shall be created, or its powers increased or diminished by special laws,' applies alone and exclusively to private corporations." ' " *Id.* 512 S.W.2d at 283, *quoting from Roberts v. Brown*, 43 Tenn.App. 567, 596, 310 S.W.2d 197, 210 (1957). Likewise, the prohibition relative to the extension of credit by a city or county to or in aid of any company, association or corporation under article II, § 29 must be qualified by the "public purpose" criterion. *Cf. West v. Tennessee Hous. Dev. Agency, supra*, 512 S.W.2d at 283.

The judgment of the Court of Appeals is reversed and the cause is remanded to the Chancery Court of Hamilton County for the entry of a decree in accordance with this opinion and removing the stay, pending appeal, of the transfer of realty by the City of Chattanooga and County of Hamilton to the Chattanooga-Hamilton County Hospital Authority ordered in its final decree.

Costs are adjudged against respondents.

COOPER, BROCK and HARBISON, JJ., and HUMPHREYS, Special Justice, concur.