Paul KETRON and Thomas Randall
White, Plaintiffs,

v.

CHATTANOOGA–HAMILTON COUNTY
HOSPITAL AUTHORITY, d/b/a Erlan-
ger Medical Center, Mack McCarley, in-
dividually and in his official capacity as
Vice President of Support Services, and
Joel Heaton, individually and in his offi-
cial capacity as Director of Construction
Services, Defendants.

No. 1:95–CV–92.

United States District Court,
E.D. Tennessee.

Jan. 23, 1996.

Harlan S. Miller, Matthew C. Billips, Kirwan, Goger, Chesin & Parks, P.C., Atlanta, GA, for plaintiffs.

Carlos C. Smith, Christine Mabe Scott, J. Robin Rogers, Strang, Fletcher, Carriger, Walker, Hodge & Smith, Chattanooga, TN, for defendants.

### *MEMORANDUM*

COLLIER, District Judge.

Before the Court is the Motion to Dismiss the Complaint and the Amended Complaint filed by Defendants pursuant to *Fed.R.Civ.P.* 12(c) (Court File No. 6). Plaintiffs moved the Court to allow a Second Amended Complaint (Court File No. 8) and responded to Defendants' motion to dismiss (Court File No. 10). The parties filed a Consent Order allowing Plaintiffs to file the Second Amend-

ed Complaint (Court File No. 13). Plaintiffs argue the Second Amended Complaint at least partly cures the grounds for Defendants' motion to dismiss. The Second Amended Complaint brings this action pursuant to 42 U.S.C. § 1983 and *Tenn.Code Ann.* § 50–1–304 (Court File No. 14). For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** the motion to dismiss.

## I. FACTS

The facts in this action are largely uncontested. Toward the end of 1993, Paul Ketron ("Ketron") held the position of Associate Director of Engineering at Erlanger Medical Center ("EMC"). Thomas White ("White") held the position of Zone Maintenance Mechanic under Ketron's supervision. Ketron reported to Bob Sachuk ("Sachuk"), EMC's Director of Engineering, who, along with Defendant Joel Heaton ("Heaton"), reported to Defendant Mack McCarley ("McCarley").

During late 1993, Plaintiffs claim they became aware of and complained about an alleged "pervasive practice of malfeasance" in EMC's "Maintenance" and "In House Construction" Departments (Court File No. 10, p. 2). Plaintiffs also complained of safety violations. Plaintiffs registered their complaints of these alleged "incidents of illegal activities in three memoranda to Defendant Heaton and EMC's Board of Directors in late 1993" (*Id.*). Heaton purportedly responded in a memorandum to Sachuk in September 1993 criticizing Ketron's "attitude" and suggesting disciplinary action (*Id.*). Soon thereafter, Plaintiffs contend they both suffered adverse employment actions, "under the pretext of a reduction in force," in retaliation for reporting alleged illegal activities: Ketron at first took a demotion and transfer, which resulted in a "constructive[ ] discharg[e]" in October 1994; White lost his job in April 1994 (*Id.* at pp. 2–3, 5–6).

## II. STANDARD OF REVIEW

■ Defendants moved the Court to dismiss this action under *Fed.R.Civ.P.* 12(c), which is technically a motion for judgment on the pleadings. However, the standard of review applicable to a Rule 12(c) motion is the same as that for a *Fed.R.Civ.P.* 12(b)(6) motion. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 n. 1 (6th Cir.1988). A motion to dismiss under *Fed. R.Civ.P.* 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir.), *cert. denied,* 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990); *see also Cameron v. Seitz,* 38 F.3d 264, 270 (6th Cir.1994). The Court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir.1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller,* 50 F.3d at 377. However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid,* 859 F.2d at 436. "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

## III. ANALYSIS

### A. Tenn.Code Ann. § 50–1–304

■ Behind the motions to amend the complaint lay Plaintiffs' interest in characterizing the EMC as a "public non-profit corporation" (Court File No. 14, p. 2), rather than "a political subdivision operating and existing under the Constitution and laws of the State of Tennessee" (Court File No. 4, p. 2). Defendants in part premised their motion to dismiss on EMC's status as a political subdivision of Tennessee and the resulting immunity from liability given by the Tennessee Governmental Tort Liability Act ("TGTLA"), *Tenn.Code Ann.* § 29–20–101 *et seq.* (Court File No. 7, p. 7). While not contesting Plaintiffs' amendment to the complaint, Defendants' nonetheless do not concede the status of the EMC as a public non-profit corporation (*See* Court File No. 11).

Plaintiffs correctly argue Section 19, Private Acts of the Tennessee General Assembly, 1976 Tenn.Priv. Acts ch. 297 ("enabling act"), *as amended by,* 1977 Tenn.Priv. Acts ch. 125, specifically denotes the EMC "shall be a public nonprofit corporation." They contend the enabling act thus fails to clearly establish the EMC as a political subdivision of the state. Furthermore, they emphasize case law proffered by Defendants indicates a "highly fact specific" inquiry into the documents creating the EMC is necessary to resolve this issue and they must be allowed discovery toward that end (*See* Court File No. 12, pp. 2–3).

Defendants point to case law, which they argue establishes the EMC as a political subdivision of Tennessee. The Court agrees. The Tennessee Supreme Court in *Chattanooga–Hamilton County Hospital Authority v. City of Chattanooga,* 580 S.W.2d 322 (Tenn. 1979) found constitutional the enabling acts creating the Chattanooga–Hamilton County Hospital Authority ("Hospital Authority," now d/b/a "EMC"). The court recognized the "gist" and "primary thrust" of the Tennessee General Assembly's actions as the "autonomous establishment of the Hospital Authority." *Id.* at 327. In context, the court reviewed the enabling act in light of the "home rule" amendment to the Tennessee Constitution. *Id.* at 324. The court analyzed Paragraph 9, § 9 of art. XI of the Tennessee Constitution, which addresses "the consolidation of any or all of the governmental and corporate functions now or hereafter vested in municipal corporations with the governmental and corporate functions now or hereafter vested in the counties in which such municipal corporations are located; ..." *Id.* at 327. Moreover, the court found the office of trustee of the Hospital Authority to be "an independent governmental entity." *Id.* at 329.

In *Johnson v. Chattanooga–Hamilton County Hospital Authority,* 749 S.W.2d 36 (Tenn.1988), the Tennessee Supreme Court examined the applicability of the Workers' Compensation Act of Tennessee ("WCA"), *Tenn.Code Ann.* § 50–6–101 *et seq.,* to the Hospital Authority. The court reviewed Sections 1 (noting the creation of a "governmental Hospital Authority"), 18 (noting the Hospital Authority as "a public instrumentality acting on behalf of the county"), and 19 (noting the Hospital Authority "shall be a public nonprofit corporation") of the enabling act. *Id.* at 37. The court concluded the Hospital Authority was a "subdivision of the state and county" as contemplated by the WCA, *Tenn. Code Ann.* § 50–6–106(5), which exempts "[t]he state of Tennessee, counties thereof and municipal corporations" from coverage.

Plaintiffs read these cases narrowly, arguing they do not specifically relate to the TGTLA (*See* Court File No. 12, pp. 2–3). The Court understands the cases broadly stand for the proposition that the Hospital Authority, now d/b/a EMC, is a governmental entity and a subdivision of the state. The TGTLA grants immunity to "all governmental entities" when they "are engaged in the exercise and discharge of any of their functions, governmental or proprietary." *Tenn. Code Ann.* § 29–20–201(a) (1995), *quoted in Lockhart v. Jackson–Madison County General Hospital,* 793 S.W.2d 943, 944 (Tenn.Ct. App.1990) (applying the TGTLA to a county hospital). A recent case followed *Lockhart* and specifically applied the TGTLA to EMC. *See Moses v. Erlanger Medical Center,* 1995 WL 610243 (Tenn.Ct.App. Oct. 18, 1995) (denying the plaintiffs' claim of mental anguish). *Moses* recognized EMC as a "governmental hospital authority," *Id.* at *1, and then applied provisions of the TGTLA to the plaintiffs' claims in that case. *See id.* at *2–*3.

█ Plaintiffs' state law claim is one for retaliatory discharge (*See* Court File No. 14, pp. 6–7). Tennessee courts have held the TGTLA grants immunity to governmental entities for claims of retaliatory discharge. *See Montgomery v. Mayor of City of Covington,* 778 S.W.2d 444, 445 (Tenn.Ct.App.1988); *Williams v. Williamson County Bd. of Ed.,* 890 S.W.2d 788, 790 (Tenn.Ct.App.1994). Given the Court's analysis of applicable case law from Tennessee, the Court concludes EMC is a political subdivision of the state of Tennessee and is immune to a claim against it for retaliatory discharge under the provisions of the TGTLA. The claims brought

against EMC under *Tenn.Code Ann.* § 50–1–304 will be **DISMISSED**.[1]

■ The Court finds the claims brought against Heaton and McCarley as individuals should not be dismissed. Plaintiffs admit *Tenn.Code Ann.* § 50–1–304(c) provides a cause of action against an employer and not usually a supervisor (Court File No. 10, p. 11). However, Plaintiffs also point to *Johnson v. Johnson*, 1992 WL 184743 (Tenn.Ct. App. Aug. 5, 1992), which indicates *an agent acting outside of his authority may be liable* for his actions. "[A]bsent any evidence that the defendant acted outside his authority as agent for the employer, the liability is that of the employer and not the agent." *Id.* at *5 (citations omitted). The Complaint alleges both Heaton and McCarley "participated in the decision to terminate Plaintiffs' employment *and to otherwise retaliate against and harass Plaintiffs*" (Court File No. 14, pp. 2–3) (emphasis added). Reading the complaint in the light most favorable to Plaintiffs and taking the factual allegations as true, the Court cannot at this time say Plaintiffs undoubtedly can prove no set of facts entitling them to relief. Accordingly, the motion to dismiss Heaton and McCarley as individuals under *Tenn.Code Ann.* § 50–1–304 will be **DENIED**.

### B. 42 U.S.C. § 1983

#### 1. EMC and official capacity suits

■ "To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of law." *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir.1994) (citation omitted). A governmental entity may be held liable under section 1983 if the governmental entity itself caused the constitutional deprivation. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.1994), *citing Monell v. Department of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). As noted above, the

Court found EMC to be a political subdivision of the state of Tennessee. In addition, a suit brought against a person in his official capacity is a suit against the governmental entity itself. *See Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir.1989), *cert. denied*, 495 U.S. 932, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1990); *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir.1993). Thus, the claims brought against Heaton and McCarley in their official capacities may be analyzed with the claims brought against EMC.

■ However, the doctrine of respondeat superior does not apply to governmental entities. *See Monell*, 436 U.S. at 691–95, 98 S.Ct. at 2036–38; *Searcy*, 38 F.3d at 286 (noting that city not liable for injury inflicted solely by employees or agents); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995). "It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality may be held liable under § 1983." *Searcy*, 38 F.3d at 286, *quoting City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989) (other citations omitted). Moreover, the policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286, *quoting Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (citation omitted).

Plaintiffs' complaint merely states the alleged conduct took place "pursuant to policy, custom and usage of EMC" (Court File No. 14, p. 2). The Court understands this to mean EMC has a policy or custom of discharging employees who act similarly to Ketron and White. *Hays v. Jefferson County, Ky.*, 668 F.2d 869 (6th Cir.1982) stands for the proposition that a governmental entity is not liable "absent a showing that the [defendant] either encouraged the specific incident of misconduct or in some other way directly

---

1. By analogy to the analysis of 42 U.S.C. § 1983 *infra*, the Court also finds the claims brought against Heaton and McCarley in their official capacities pursuant to *Tenn.Code Ann.* § 50–1–304 will be **DISMISSED**. Suits brought against individuals in their official capacities are the

same as suits brought against the governmental employer. *See Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir.1989), *cert. denied*, 495 U.S. 932, 110 S.Ct. 2173, 109 L.Ed.2d 502 (1990); *Pusey v. City of Youngstown*, 11 F.3d 652, 657 (6th Cir.1993).

participated in it." *Id.* at 874. This requires Plaintiffs to at least demonstrate EMC "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct" of Heaton and McCarley. *Id.* Plaintiffs have not done so. The complaint does recite the key words—policy, custom, and usage—yet it goes no further. These recitations are merely legal conclusions without supporting facts. Accordingly, the claims brought against the EMC and Heaton and McCarley in their official capacities under 42 U.S.C. § 1983 will be **DISMISSED.**

### 2. *Heaton and McCarley in their individual capacities*

 Defendants argue Heaton and McCarley have qualified immunity for the Section 1983 claims brought against them in their individual capacities (Court File No. 7, pp. 5–7). Government officials enjoy qualified immunity if their "conduct does not violate clearly established federal 'statutory or constitutional rights of which a reasonable person would have known.'" *Gossman v. Allen,* 950 F.2d 338, 341 (6th Cir.1991), *quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The proper inquiry is whether "a reasonable official would have known that the challenged conduct violated that right." *Id., citing Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Plaintiffs claim their complaints "about official malfeasance at EMC constituted speech protected by the First Amendment" and were "a substantial or motivating factor in the adverse actions taken against them by defendants" (Court File No. 14, pp. 6–7). Case law indicates the exercise of one's First Amendment right to free speech may be protected through a Section 1983 claim. *See McBride v. Village of Michiana,* 30 F.3d 133 (table), 1994 WL 396143, at p. *3 (6th Cir. July 28, 1994) (reversing district court decision dismissing Section 1983 claim based on "retaliatory measures" taken against the plaintiff for exercising right to free speech and freedom of the press); *Boger v. Wayne County,* 950 F.2d 316 (6th Cir.1991) (noting the plaintiff "need not have suffered loss of salary, promotional opportunities, seniority or other monetary deprivations to have a cognizable interest protected by the First Amendment"); *Rakovich v. Wade,* 850 F.2d 1180, 1189 (7th Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988) (noting "an investigation conducted in retaliation for comments protected by the first amendment could be actionable under section 1983").

Reading the complaint in the light most favorable to Plaintiffs and taking the factual allegations as true, the Court cannot at this time say Plaintiffs undoubtedly can prove no set of facts entitling them to relief. Accordingly, the motion to dismiss Heaton and McCarley as individuals under 42 U.S.C. § 1983 will be **DENIED.**

## IV. *CONCLUSION*

The Court will **GRANT** the motion to dismiss as to all claims against EMC and Heaton and McCarley in their official capacities. The Court will **DENY** the motion to dismiss as to all claims against Heaton and McCarley in their individual capacities.

An Order will enter.