FILED

05/18/2022

Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 24, 2022 Session[1]

## METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY ET AL. v. TENNESSEE DEPARTMENT OF EDUCATION ET AL.

**Appeal by Permission from the Court of Appeals**
**Chancery Court for Davidson County**
**No. 20-0143-II    Anne C. Martin, Chancellor**

_____

**No. M2020-00683-SC-R11-CV**

_____

SHARON G. LEE, J., with whom HOLLY KIRBY, J., joins, concurring in part and dissenting in part.


In this interlocutory appeal, the issues we address are whether the Plaintiffs, Metropolitan Government of Nashville and Davidson County ("Metro") and Shelby County, have standing to challenge the constitutionality of the Tennessee Education Savings Account Pilot Program,[2] ("the ESA Act"), and, if so, whether the ESA Act violates the Home Rule Amendment.

I agree with the Court that the Plaintiffs have standing to bring this action. The ESA Act causes a distinct and palpable injury to the Plaintiffs' sovereignty—their right to control their local affairs—as guaranteed by the Home Rule Amendment. As we have held, the Home Rule Amendment was adopted "to strengthen local self-government" and "to fundamentally change" the relationship with the General Assembly. *Civil Serv. Merit Bd. of Knoxville v. Burson*, 816 S.W.2d 725, 728 (Tenn. 1991); *S. Constructors, Inc. v. Loudon Cnty. Bd. of Educ.*, 58 S.W.3d 706, 714 (Tenn. 2001). Based on the Home Rule Amendment, Tennessee's counties and home-rule municipalities "derive their power from sources other than the prerogative of the legislature," and they enjoy constitutional protection against local legislation enacted without their consent. *S. Constructors*, 58

_____

[1] This case was originally heard on June 3, 2021. In light of the untimely death of Justice Cornelia A. Clark, this case was re-argued on February 24, 2022.

[2] Tenn. Code Ann. §§ 49-6-2601 to -2612 (2020 & Supp. 2021).

S.W.3d at 714; Tenn. Const. art. XI, § 9, cl. 2. Thus, the Plaintiffs' standing is based on the ESA Act's impairment of their ability to self-govern regarding school funding.

I disagree with the Court that the ESA Act does not implicate the Home Rule Amendment. The Court's decision ignores the acknowledged harm to the Plaintiffs' sovereignty caused by the ESA Act.[3] It is this established injury to the Plaintiffs' ability to self-govern that the Home Rule Amendment was intended to protect. While the ESA Act facially refers only to a Local Education Agency ("LEA"),[4] the Act substantially affects the Plaintiffs' ability to decide issues of local concern. That is enough under our previous decisions to implicate the Home Rule Amendment. Without a provision of local approval as required by the Amendment, the ESA Act is unconstitutional.

*The Home Rule Amendment*

The Home Rule Amendment was adopted by the 1953 Limited Constitutional Convention and was ratified by Tennessee voters in November 1953. One area of concern for convention delegates was legislation that removed governmental functions from certain cities and counties without local approval.[5] By approving the Home Rule Amendment, the Convention sought to protect the rights of counties and municipalities by requiring that any local bill affecting them had to provide for one of two forms of local approval.[6]

The Home Rule Amendment to the Tennessee Constitution prohibited direct interference with local officeholders and required local approval for legislation affecting particular counties and municipalities:

> [A]*ny act* of the General Assembly private or *local in form or effect applicable to a particular county or municipality* either *in its governmental* or its proprietary *capacity shall be void and of no effect unless the act* by its terms either *requires the approval of a two-thirds vote of the local legislative body of the municipality or county, or requires approval in an election by a*

---

[3] The Court limits its analysis to whether the ESA Act applies to the Plaintiffs. I also limit my analysis to this point. In my view, the remaining requirements of the Home Rule Amendment are also met: that the ESA Act is local in form or effect and is applicable to the Plaintiffs in their governmental or proprietary capacities.

[4] LEAs include any county or city school system or special school district. *See* Tenn. Code Ann. § 49-1-103 (2020).

[5] Journal and Proceedings of the Limited Constitutional Convention of Tennessee 937 (1953).

[6] *Id.* at 1113.

2

*majority of those voting in said election in the municipality or county affected.*

Tenn. Const. art. XI, § 9, cl. 2 (emphasis added).

### *The ESA Act*

Under the ESA Act, "eligible students" in Metro and Shelby County—beginning with 5,000 students and increasing to 15,000 students in five years—may deposit their individual portion of state *and* local education funding into personalized savings accounts.[7] This transfer satisfies the state's funding obligations for those students, and the state need not provide any more funding for the LEA. *See* Tenn. Code Ann. § 49-6-2605(b)(1) (2020 & Supp. 2021). Students can withdraw from public schools and use their account funds as vouchers to pay private school tuition and related expenses. *See* Tenn. Code Ann. §§ 49-6-2602(9) (2020 & Supp. 2021); 49-6-3001(c)(3)(A)(iii) (2020 & Supp. 2021) (defining "private school" as a subset of "nonpublic school[s]"). The Plaintiffs have to appropriate the same level of per-pupil funding to an LEA as the year before, regardless of any decrease in state funding.[8]

---

[7] Under the ESA Act, "eligible students" are students zoned to attend any school in an LEA, other than the Achievement School District, with at least ten schools

    *(a)*       Identified as priority schools in 2015, as defined by the state's accountability system pursuant to § 49-1-602;

    *(b)*       Among the bottom ten percent (10%) of schools, as identified by the department in 2017 in accordance with § 49-1-602(b)(3); and

    *(c)*       Identified as priority schools in 2018, as defined by the state's accountability system pursuant to § 49-1-602[.]

Tenn. Code Ann. § 49-6-2602(3)(C)(i). "Priority schools" are designated by the Commissioner of the Department of Education and include schools in the bottom five percent of schools in performance, schools failing to graduate one-third or more of their students, and "schools with chronically low-performing subgroups that have not improved after receiving additional targeted support." Tenn. Code Ann. § 49-1-602(b)(2) (2020 & Supp. 2021). Students need not be zoned for one of the schools meeting all three of the ESA Act's criteria to be eligible for a voucher account. As long as a school district contains ten such schools, all of its students may be eligible, no matter the school they are zoned to attend. Students zoned to attend a school in the Achievement School District as of May 24, 2019, are also eligible for an account. *Id.* § 49-6-2602(3)(C)(ii). The Achievement School District is an LEA within the Tennessee Department of Education, consisting of low-performing schools run by the District or certain charter management organizations. Achievement Sch. Dist., *About Us*, http://achievementschooldistrict.org/index.php/aboutus/ (last visited May 3, 2022). All the schools in the Achievement School District are in Metro and Shelby County.

[8] *See* Tenn. Code Ann. §§ 49-3-314; 49-6-2605(b)(1) (requiring the county school districts to "count[]" each student with a voucher account, "[f]or the purpose of funding calculations," in their

3

As background, the ESA Act was first proposed to apply to Tennessee's five largest counties: Metro (Davidson County), Shelby, Knox, Hamilton and Madison.[9] When the ESA Act met with opposition in the House, the scope of the Act was limited to Metro and Shelby, Hamilton, and Knox Counties by changing the definition of "eligible students."[10] The ESA Act narrowly passed the House by a vote of fifty to forty-eight after the Speaker of the House promised that the Senate version of the Act would exclude Knox County. In the Senate, the final version of the ESA Act applied only to Metro and Shelby County based on a narrow definition of "eligible students" that included students zoned to attend school in districts with ten or more priority schools in 2015 and 2018 and that were among the bottom ten percent of schools in 2017.[11] This definition anchored the criteria to particular years, meaning that the ESA Act could only ever apply to Metro and Shelby County without further legislation. The ESA Act passed by a margin of fifty-one to forty-six votes in the House and nineteen to fourteen votes in the Senate. Applying only to Metro and Shelby County, the ESA Act had no provision for approval by a two-thirds vote of the local legislative body or a majority vote in a local election in either county.

### The ESA Act's Application to the Plaintiffs

The central issue here is whether the ESA Act is "applicable to" the Plaintiffs to implicate the Home Rule Amendment. The phrase "applicable to" comes from the Home Rule Amendment, which provides that the Amendment applies to a statute (here, the ESA Act) that is "local in form or effect *applicable to a particular county* . . . in its governmental . . . capacity." Tenn. Const. art. XI, § 9, cl. 2 (emphasis added). The Court holds that the phrase "applicable to" in the Home Rule Amendment means that a statute must "regulate" or "govern" a county or municipality to implicate the Home Rule Amendment. According to the Court, the ESA Act only regulates or governs the LEAs, not the Plaintiffs. Yet this holding conflicts with our previous decisions interpreting the Home Rule Amendment and with the Court's own analysis on standing, which recognizes and depends to a large degree on the fundamental intent, purpose, and effect of the Home Rule Amendment.

The fact that the ESA Act names the LEAs and not the Plaintiffs should not be the end of our review. We cannot elevate form over substance and stop short with our analysis.

---

"enrollment figures"); *see also* Tenn. Code Ann. § 49-3-356(a) (requiring that "[e]very local government shall appropriate funds sufficient to fund the local share" of the statewide funding levels).

[9] H.B. 0939, Amend. No. 1, 111th Gen. Assemb., Reg. Sess. (Tenn. 2019) (H. Amend. 0188) (withdrawn Apr. 23, 2019).

[10] *See id.* amend. No. 2 (H. Amend. 0445) (as adopted by the House Apr. 23, 2019).

[11] S.B. 0795, Amend. No. 5, 111th Gen. Assemb., Reg. Sess. (Tenn. 2019) (S. Amend. 0417) (as adopted by the Senate Apr. 25, 2019).

This Court has long disfavored such a formalistic analytical approach to the Home Rule Amendment. As we explained over forty years ago:

> Since 19 November 1953, it has been firmly established that any and all legislation "private and local in form [o]r effect" affecting Tennessee counties or municipalities, in any capacity, is absolutely and utterly void unless the Act requires approval of the appropriate governing body or of the affected citizenry.
>
> The test is not the outward, visible or facial indices, nor the designation, description or nomenclature employed by the Legislature. Such a criterion would emasculate the purpose of the amendment. The whole purpose of the Home Rule Amendment was to vest control of local affairs in local governments, or in the people, to the maximum permissible extent. The sole constitutional test must be whether the legislative enactment, irrespective of its form, is local in effect and application.

*Farris v. Blanton*, 528 S.W.2d 549, 551 (Tenn. 1975). Thus, we should see whether, although not expressly named in the ESA Act, the Plaintiffs are in fact governed or regulated by the Act. We do this by seeing if the Act substantially affects the Plaintiffs in a material way.

In *Chattanooga-Hamilton County Hospital Authority v. City of Chattanooga*, 580 S.W.2d 322 (Tenn. 1979), we held that the Home Rule Amendment was implicated as to a county when two private acts expressly named and so governed or regulated a newly created hospital authority and, in addition, substantially affected the county.[12] We also held that the Home Rule Amendment was not implicated as to a city because the private acts did not "substantially affect[]" the city. *Id.* at 328. The lesson from *Chattanooga-Hamilton County Hospital Authority* is that a statute that is facially directed at another entity, but which substantially affects a county, may be found to govern or regulate the county, be "applicable to" it, and thus implicate the Home Rule Amendment.

Consistent with *Chattanooga-Hamilton County Hospital Authority* is an official opinion from the Tennessee Attorney General finding "a strong argument" in favor of the correctness of the Secretary of State's determination that a private act was invalid because it did not provide for local approval under the Home Rule Amendment. Tenn. Att'y Gen. Op. No. 00-149, *Memphis School District, Validity of 1970 Private Acts, Ch. 30* [sic], at 2 (2000). The private act in question amended the Memphis City School System's charter

---

[12] We held that the private acts were valid because they provided for local approval by the county's electorate and legislative body. *See Chattanooga-Hamilton Cnty. Hosp. Auth.*, 580 S.W.2d at 328.

and, among other things, required candidates for the Memphis City School Board to file a nominating petition and deposit $100 with the Shelby County Election Commission secretary. If a candidate was elected or received ten percent of the votes cast, the Election Commission secretary had to refund the deposit to the candidate; otherwise, the secretary had to pay the deposit to the Comptroller of the City of Memphis to be paid to the School Board and earmarked for education.[13] The Attorney General concluded that the Private Act affected Shelby County and the City of Memphis, as well as the Memphis City School System. The Private Act did this by placing duties on officials of the County and the City and by directing how they would use certain funds. Thus, the Attorney General concluded the Home Rule Amendment required a referendum, which was not provided for in the Private Act. *See id.* In short, the Private Act was facially directed at the Memphis City School System but also affected Shelby County and the City of Memphis. It thus implicated the Home Rule Amendment.

Like the private act amending the Memphis City School System's charter, the ESA Act is facially directed at the LEAs but regulates or governs the Plaintiffs by substantially affecting them in a material way. The ESA Act does this by imposing certain duties and obligations on officials in Metro and Shelby County regarding school funding. Although an LEA prepares and submits to the county a proposed budget for school spending, the LEA cannot assess, levy or collect taxes to fund the budget. Meanwhile, the county must approve a budget for the LEA, set a tax rate, and levy and collect taxes to fund the budget. *See State ex rel. Weaver v. Ayers*, 756 S.W.2d 217, 221–25 (Tenn. 1988). LEAs are funded by both state and local governments, with the local portion varying according to local taxes collected by the counties. *See id.*; Tenn. Code Ann. § 49-3-307(a)(10) (2020). Overall funding levels are determined according to the state's Basic Education Program ("BEP").[14] Only in Metro and Shelby County are state and local education funds deposited in eligible students' savings accounts to pay for private education. *See* Tenn. Code Ann. § 49-6-2605(a). This transfer to the students' savings accounts satisfies the state's obligations under the BEP, and the state need not provide any further funding to the LEA. *See id.* § 49-6-2605(b)(1) ("The ESA funds for participating students must be subtracted from the state BEP funds otherwise payable to the LEA."). Yet the LEAs must continue to "count[]" each student with a voucher account, "[f]or the purpose of funding calculations," in their "enrollment figures"—even though the student no longer attends public schools. *Id.* Metro and Shelby County have to appropriate the same level of per-pupil funding as in the prior

---

[13] Act of March 2, 1970, ch. 340, § 7, 1970 Tenn. Priv. Acts 1271, 1274, 1277. *But cf.* Tenn. Att'y Gen. Op. No. 00-149, at 1 n.2 (noting the act never took effect based on the Secretary of State's certification that it was "rejected or disapproved or not concurred in by the proper authorities").

[14] "'Basic Education Program' or 'BEP' is the funding formula for the calculation of kindergarten through grade twelve (K-12) education funding necessary for our schools to succeed[.]" Tenn. Code Ann. § 49-3-302(3) (2020).

year, regardless of any change in the state's funding for the later year. *See* Tenn. Code Ann. § 49-3-314(c)(2) (2020) ("No LEA shall use state funds to supplant total local current operating funds . . . ."); *see also* Tenn. Code Ann. § 49-3-356(a) (2020) ("Every local government shall appropriate funds sufficient to fund the local share of the BEP."). Only in Metro and Shelby County may "eligible" students leave the public school system for private schools while still being counted as public school students for funding purposes. This means that Metro and Shelby County have to continue to fund the local share of the BEP for ESA students attending private schools but not for non-ESA students who attend private schools.

In short, the ESA Act harms the Plaintiffs in their sovereign capacity. It does this by removing from the Plaintiffs the discretion to apply school funds to any public need they may deem appropriate—including education—or to adjust their tax rates depending on public school enrollment. The ESA Act, thus, substantially affects the Plaintiffs in a material way and so governs or regulates them, thereby implicating the Home Rule Amendment. That is why under the Home Rule Amendment, the Plaintiffs have a constitutional right to locally approve any statute that affects them in their sovereign capacity.

Our early Home Rule Amendment decision in *Fountain City Sanitary District v. Knox County Election Commission*, 308 S.W.2d 482 (Tenn. 1957), does not undercut this analysis or conclusion. Indeed, it has no real bearing. This decision suggests that certain local governmental or quasi-governmental entities, such as sanitary districts, are not *themselves* municipalities for purposes of the Home Rule Amendment. *See also Perritt v. Carter*, 325 S.W.2d 233 (Tenn. 1959) (holding that special school districts are not municipalities under the Home Rule Amendment). I agree. And if a statute only governs or regulates these types of entities, the statute may not implicate the Home Rule Amendment. But that misses the point. *Fountain City Sanitary District* did not consider whether a statute that facially governs or regulates an entity but also substantially affects a county or municipality in a material way also governs or regulates, and so is applicable to, the county or municipality—thereby implicating the Home Rule Amendment. Here, the ESA Act, while facially directed at the LEAs, substantially affects the Plaintiffs in a material way. That the LEAs themselves are not counties or municipalities is irrelevant to this analysis and conclusion.

Under the Home Rule Amendment, it is "firmly established that any and all legislation 'private and local in form [o]r effect' affecting Tennessee counties or municipalities, in any capacity, is absolutely and utterly void unless the Act requires approval of the appropriate governing body or of the affected citizenry." *Farris*, 528 S.W.2d at 551 (quoting Tenn. Const. art. XI, § 9, cl. 2). "The whole purpose of the Home Rule Amendment was to vest control of local affairs in local governments, or in the people,

to the maximum permissible extent." *Id.* To this end, "[t]he sole constitutional test must be whether the legislative enactment, irrespective of its form, is local in effect and application." *Id.* To adopt the Court's formalistic construction of the Home Rule Amendment and the ESA Act is to ignore this purpose and to elevate form over substance. *Cf. id.* ("The test is not the outward, visible or facial indices, nor the designation, description or nomenclature employed by the Legislature. Such a criterion would emasculate the purpose of the amendment.")

For these reasons, I agree the Plaintiffs have standing because of the ESA Act's harm to their sovereignty. But I respectfully dissent from the Court's decision on the constitutionality of the Tennessee Education Savings Account Pilot Program under the Home Rule Amendment. I would find the ESA Act unconstitutional.


_____

SHARON G. LEE, JUSTICE