IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

FILED

March 24, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

CLEVELAND SURGERY CENTER ) 
L.P., and OCOEE PHYSICAL ) BRADLEY CHANCERY
THERAPY, INC., )
 )
  Plaintiffs/Appellees, ) NO. 03A01-9804-CH-00120
 )
v. ) HON. EARL HENLEY,
 ) CHANCELLOR
BRADLEY COUNTY MEMORIAL )
HOSPITAL, BRADLEY BUILDING )
LLC, and OCOEE HEALTH )
ALLIANCE, ) AFFIRMED,
 ) as MODIFIED,
  Defendants/Appellants ) and REMANDED.


Michael E. Callaway, Cleveland, for Appellant Bradley County Memorial Hospital.

Donald J. Cocke, Memphis, for Appellant Ocoee Health Alliance.

William H. West, Nashville, and Buddy B. Presley, Jr., Chattanooga, for Appellees Cleveland Surgery Center and Ocoee Physical Therapy, Inc.

William B. Hubbard and Jerry W. Taylor, Nashville, for Amici Curiae, Tennessee Hospital Association and Health Systems and Hospital Alliance of Tennessee, Inc.


# OPINION

### INMAN, Senior Judge

Two private health care providers sought a declaratory judgment that a county-owned hospital and its business partners had entered into business ventures which were ultra vires and in violation of the Tennessee Constitution. The trial court held that the county hospital had exceeded its authority by entering into unconstitutional business dealings with private entities, and issued an injunction permanently restraining the hospital from participating in these or any similar ventures. We affirm the judgment of the trial court as to the specific

1

business ventures involving these defendants. We modify the judgment by narrowing the permanent injunction consistent with this opinion.

Plaintiffs Cleveland Surgery Center, hereinafter "Surgery Center," and Ocoee Physical Therapy, Inc., hereinafter "Physical Therapy," two businesses owned and operated by private physicians and physical therapists respectively, learned of plans by Bradley County Memorial Hospital, hereinafter "County Hospital," to acquire land and build a medical office building adjoining County Hospital. The plan provided that Ocoee Health Alliance, hereinafter the "Alliance," a partnership owned by County Hospital (50% interest) and local physicians (50% interest), would secure financing for the $8,500,000.00 building project, with no investment or personal liability for the loan on the part of the physicians, who would, however, have an ownership interest in the office building, with each physician owning an equal share of the Alliance's 50% interest. That building project is not the subject of appeal, since SunTrust bank threatened to default the Hospital's loan after adverse publicity and the filing of this lawsuit, resulting in sale of the project to other parties. The appeal concerns whether the Hospital can lawfully engage in similar projects with Alliance.

Desiring to provide services for the patients of County Hospital, Physical Therapy sought membership in the Alliance which was denied on grounds that the Alliance already offered physical therapy services. Surgery Center, which operates a stand-alone surgical clinic, feared that the Alliance planned to establish a competing surgical clinic in the new building and joined with Physical Therapy in this suit against County Hospital, the Alliance, Bradley County Hospital Foundation and Bradley Builders, LLC, alleging unfair competition by the Alliance, ultra vires acts by County Hospital under its Private Acts and

2

unconstitutional business ventures between partners County Hospital and the Alliance.

The trial court held that County Hospital, through its actions as an agent and arm of Bradley County, had exceeded its authority by lending the credit of the county and joining in ultra vires business ventures with private industry in violation of Article II, § 29 of the Tennessee Constitution.

Defendants County Hospital and the Alliance appeal and raise the following issues, verbatim:

1. The Chancellor erred when he determined Bradley County Memorial Hospital is ". . . an agent and arm of Bradley County"; that is, is not an independent governmental entity or quasi-municipal corporation.

2. The Chancellor erred when he found the Hospital's participation in the Ocoee Health Alliance, which is authorized by the Private Acts creating and governing the Hospital, as well as by T.C.A. sect. 7-57-601 et seq. [The Private Act Hospital Authority Act], was ultra vires and violated Article II, Section 29 of the Constitution of Tennessee.

3. The terms of the Order of Final Judgment and Permanent Injunction entered by the Chancellor are too broad and imprecise and unduly restrict and interfere with the Hospital's operation.

4. The Chancellor erred in finding the Plaintiffs had standing to bring this action.

## I

Surgery Center and Physical Therapy have standing to bring this action by virtue of the special injuries which they allege are occasioned by unfair and illegal competition by the Alliance. *Morristown Rescue Squad v. Volunteer Development,* 793 S.W.2d 262 (Tenn. App. 1990); *Parks v. Alexander,* 608 S.W.2d 881, 890 (Tenn. App. 1980), cert. denied, 451 U.S. 939 (1981).

## II

Appellants argue that the Chancellor erred:

when he determined Bradley County Memorial Hospital

3

"... is an agent and arm of Bradley County"; that is, is not an independent governmental entity or quasi-municipal corporation.

Appellant's brief, page 1.

The Chancellor made no finding that County Hospital "is not an independent governmental entity or a quasi-municipal corporation." Rather, the court's opinion describes County Hospital as "an agent and arm of Bradley County" **under the facts and circumstances of this particular case.** Tennessee Private Act County Hospitals have, in some instances, properly been referred to as "governmental entities," "independent governmental entities," "public non-profit corporations," "political subdivisions of Tennessee," "subdivisions of the state and county," or "public instrumentalities acting on behalf of the county," *Ketron v. Chattanooga-Hamilton County Hospital Authority,* 919 F. Supp. 280, 282 (E.D. Tenn., 1996), (for the purpose of determining whether former employees were entitled to bring suit under 42 U.S.C. § 1983 for alleged retaliatory discharge). Other appropriate descriptive terms have included "municipal corporation," *Finister v. Humboldt General Hospital, Inc.,* No. 02S01-9704-CH-00038 (Tenn. May 26, 1998), (for the purpose of determining whether a Private Act Hospital is exempt from the Tennessee Workers' Compensation Law), "quasi-municipal corporation," *Professional Home Health & Hospice, Inc. v. Jackson-Madison County General Hospital District,* 759 S.W.2d 416 (Tenn. App. 1988), (for the purpose of determining whether a Hospital Authority could purchase and operate a home health care business outside the territorial jurisdiction specifically established by its Private Act), and "governmental hospital authority," *Moses v. Erlanger Medical Center,* 1995 WL 610243 (Tenn. App. Oct. 18, 1995), (for the purpose of determining whether plaintiff could maintain a tort action against a Private Act Hospital for mental anguish). No doubt other similar terms may be appropriate in other instances; the trial court did

4

not exclude them. It merely considered (1) the provisions of Bradley County's Private Act, (2) the relevant statutes, (3) Article II, § 29 of the Tennessee Constitution, (3) the kinds of Hospital/Alliance and private/public ventures at issue in this case, and (4) the potential obligation of Bradley County funds. Based on that analysis, the trial court held that in this instance, County Hospital operates as an agent or arm of Bradley County and, as such, is subject to certain restrictions under both its Private Acts and Article II, § 29.

Appellants argue that County Hospital is "not an agency of the county. . . but rather an independent governmental entity," because the Attorney General defined Erlanger Hospital as such in Tenn. Att'y. Gen. Op. No. U-95-040,[1] April 13, 1995:

> "Thus, we think the prohibitions in Article 2, Section 29 **would not apply** to this authority or to any other private act hospital authority which is an **independent governmental entity.** The prohibitions **would apply** to a private act hospital authority which is a **department of a municipality or county**. [Emphasis added].[2]

[1] Indeed, the Attorney General has been asked on several occasions to advise legislators as to the constitutional implications of physician-hospital-organizations (PHO's). Tenn. Att'y. Gen. Op. 95-056, May 23, 1995, involved an opinion as to "whether the General Assembly may constitutionally enact proposed legislation that would authorize a county-owned hospital to hold an 'ownership interest' in an organization owned in part by medical practitioners licensed in the State of Tennessee, without requiring approval by a local referendum." The Attorney General advised that the proposed law "is unconstitutional to the extent it authorizes a county to lend its credit in aid of a private individual or entity or to act as a shareholder, with others, in any company, association or corporation without approval by referendum required by Article 2, Section 29 of the Tennessee Constitution. Whether any particular transaction would constitute an unconstitutional lending of credit or ownership interest could only be determined after an analysis of all the facts and circumstances of the transaction, especially the form of the ownership and whether the county would be incurring an additional liability, direct or contingent, by participating in such organization." By way of example, the Attorney General opined that "a loan guarantee or other pledge of assets by the county on behalf of a physicians hospital organization would also constitute such a lending of credit."

*See also,* Tenn. Att'y. Gen. Op. No. U97-037, July 28, 1997: "The extent to which the Board of Trustees [of Cookeville General Hospital] may exercise any of the powers accorded to the hospital under the Private Act Hospital Authority Act of 1996 depends upon its authority under the City Charter. The hospital is not a separate legal entity; rather it is a facility owned by city government. . . it should be noted, further, that Article II, Section 29 of the Tennessee Constitution prohibits a city, county or town from owning stock with others. It is not clear whether a court would conclude that acting as a member in a not-for-profit corporation, which issues no stock, would violate the provision."

*See also,* Tenn. Att'y. Gen. Op. No. 98-119, July 2, 1998: McNairy County Hospital Board of Trustees has no authority to sell the hospital without permission of the County Commission. Under the Private Acts governing the hospital, such authority rests with the McNairy County Commission, which can, however, sell the hospital without the permission of, or participation by, the hospital's Board of Trustees. (Hospital Trustees, without the involvement of the County Commission, had given a "Right of First Refusal" on the sale of the McNairy County Hospital to the Jackson-Madison County General Hospital District.)

[2] The Private Act which created Chattanooga-Hamilton County Hospital Authority, [Erlanger Hospital] is quite different from the Bradley County Private Act, as will be shown. The Chattanooga Act provides that: "Neither the county nor the city shall in any event be liable for the payment of the principal of or interest on any bonds or notes of the [hospital] authority. . . or any pledge, mortgage, obligation or agreement of any kind whatsoever . . . none of the . . . obligations shall be construed to constitute an indebtedness of either the county or city within the

The Attorney General recommended the following determinative analysis:

> . . . an analysis of all the facts and circumstances of the transaction, especially the form of the ownership and whether the county would be incurring an additional liability, direct or contingent, by participating in such an organization.

The record demonstrates that the trial court in this case performed the recommended analysis, described in detail in its Memorandum Opinion. We find no fault with the conclusion drawn by the trial court that the County Hospital functions, in this instance, as an agent and arm of Bradley County.[3] The trial court's judgment on this issue is accordingly affirmed.

## III

Appellants next complain of the trial court's finding that County Hospital's participation in the Ocoee Health Alliance was ultra vires and violated Article II, § 29 of the Tennessee Constitution. Appellants contend that the partnership is authorized by the Private Acts creating and governing County Hospital and by T.C.A. § 7-57-601 et seq. (1996).

In 1996 the Legislature passed The Private Act Hospital Authorities Act, T.C.A. § 7-57-601 et seq., which extends to all Tennessee Private Act hospitals the powers previously granted to Private Act Metropolitan Hospitals under T.C.A. § 7-57-501 et seq. (1995). These Acts provide, as pertinent:

> (b) In addition to powers otherwise granted by this part or any other public or private act of this state, or by any state regulation or federal law or regulation, **and to the extent at the time not prohibited by the Constitution of Tennessee** [emphasis added], a private act metropolitan hospital authority has, together with all powers incidental thereto or necessary to discharge the powers granted specifically herein, the following powers:

---

meaning of any constitutional or statutory provision whatsoever."

[3]*Finister v. Humboldt General Hopital, Inc.,* No. 02S01-9704-CH-00038 (Tenn. May 26, 1998), squarely holds that a Private Act hospital is an agency of the County which owns it. While this case arose in the context of the Workers' Compensation Law, T.C.A. § 50-6-106(5), we do not believe that a workers' compensation setting involves a definition of "State of Tennessee"," counties thereof" and" municipal corporations" that is different from the usual definition of these terms. The "City of Jackson" can only be defined in one manner, whether the underlying case involves workers' compensation, tort, contract, municipal corporation law, or whatever. For this reason, we are of the opinion that the holding of the Supreme Court in *Finister* is conclusive of the issue that a Private Act hospital is an agency of the County, unless it is designated and created as an independent entity.

(1) To participate as a shareholder in a corporation, as a joint venturer in a joint venture, as a general partner in a general partnership, as a limited partner in a limited partnership or a general partnership, as a member in a nonprofit corporation or as a member of any other lawful form of business organization, which provides hospital, medical or health care or is engaged in any activity supporting or related to the exercise of any power granted to a private act metropolitan hospital authority;

T.C.A. § 7-57-603 (incorporating T.C.A. § 7-57-502(b)(1)). Such hospitals may:

(10)(c) . . . acquire, manage, lease, purchase, sell, contract for or otherwise participate solely or with others in the ownership or operation of hospital, medical or health program properties and facilities, and properties, facilities, and programs supporting or relating thereto of any kind and nature whatsoever and in any form of ownership whenever the board of trustees in its discretion shall determine it is consistent with the purposes and policies of this part or any private act applicable to it, and may exercise such powers regardless of the competitive consequences thereof.

T.C.A. § 7-57-603 (incorporating T.C.A. § 7-57-502(c)).

By specific directive of the Legislature, both the 1995 and 1996 Private Act Hospital Authority Acts contain special rights which are to be provided to Private Act Hospitals **to the extent at the time not prohibited by the Constitution of Tennessee.** The trial court held that the ventures engaged in by County Hospital and the Alliance, which at first blush appear lawful, considering only sections (b)(1) and (10)(c) of the 1996 Private Act Hospital Act, are in fact unconstitutional, considering the constitutional limitation as recognized by the Legislature in section (b) of the Act.

The court opined that County Hospital/Alliance ventures violated Article II, § 29 of the Constitution, which provides:

The General Assembly shall have power to authorize the several counties and incorporated towns in this State, to impose taxes for County and Corporation purposes respectively, in such manner as shall be prescribed by law; and all property shall be taxed according to its value, upon the principles established in regard to State taxation. **But the credit of no County, City or Town shall be given or loaned to or in aid of any person, company, association or corporation, except upon an election to be first held by the**

7

**qualified voters of such county, city or town, and the assent of three-fourths of the votes cast at said election. Nor shall any county, city or town become a stockholder with others in any company, association or corporation except upon a like election, and the assent of the majority.** [Emphasis added.]

Appellants contend that Article II, § 29 of the Constitution applies only to "counties, cities or towns" and therefore does not require an election and the assent of three-fourths or a majority of the voters before Private Act Hospitals engage in business involving credit or loans with private individuals, corporations or associations.

This issue was addressed recently by this court in a case to be published, *Eye Clinic, P.C. v. Jackson-Madison County General Hospital,* No. 02A01-9707-CH-00143 (Tenn. App. July 24, 1998, perm. app. denied January 11, 1999). Judge Holly Kirby Lillard, writing for the court, applied the analysis recommended by the Tennessee Attorney General. After describing the particular facts surrounding the challenged businesses of West Tennessee Alliance,[4] Judge Lillard considered those ventures in light of the Private Act Hospital Authority Acts of 1995 and 1996, the Private Act which enabled Jackson-Madison County General Hospital, and Article II, § 29.

Judge Lillard held that in the West Tennessee Alliance ventures, Article II, § 29 was not infringed because Jackson-Madison County General Hospital was not vested by its enabling Private Act with the "power to levy taxes;" "power to compel [the city of Jackson] to invoke its taxing power to make payments;" or power to "obligate Madison County" to appropriate funds "to commence [hospital] operations and pay operating deficits." The Private Act which enabled the hospital in that case merely provided that Madison County was "authorized to appropriate funds" for the hospital; the county was not **obligated** to do so.

---

[4]A partnership similar or identical to the defendant Alliance in this case.

(Emphasis in original.) Therefore, private ventures between that hospital and West Tennessee Alliance could obligate only hospital-generated or physician-generated funds; no county taxes could be obligated by the private/public ventures in contravention of Article II, section 29.

Applying the analysis in *Eye Clinic v. Jackson-Madison County*, we compare the Private Acts authorizing Bradley County Memorial Hospital to Madison County's Private Acts as interpreted by Judge Lillard. Bradley County Hospital was established under Chapter 846 of the Private Acts of 1947:

> SECTION 1. BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE, that the County of Bradley . . . upon the approval of a majority of the qualified voters of said County . . . is hereby authorized to issue not to exceed $400,000.00 dollars coupon bonds . . . for the purpose of acquiring a necessary site or location for a hospital, and . . . necessary equipment . . . .
>
> SECTION 2. BE IT FURTHER ENACTED, . . . Said bonds, when issued in conformity with this Act, shall be direct general obligations of Bradley County, for the payment of which, with interest, **well and truly to be made the full faith and credit and all the taxing power of the County shall be irrevocably pledged . . . .** (Emphasis added.)
>
> \* \* \*
>
> SECTION 8. BE IT FURTHER ENACTED, That it shall be the duty of the Quarterly County Court of Bradley County annually **to levy and provide for the collection of a sufficient tax** on all the taxable property in the County, over and above all other taxes authorized and limited by law, for the purpose of creating a sinking fund to pay the interest on said bonds as the same falls due and to retire said bonds as they mature.

Chapter 197 of Private Acts of 1953 provided for the operation of the hospital under the Board of Directors and gave to that Board:

> . . . full, absolute and complete authority and responsibility for the operation, management, conduct and control of the business and affairs of said hospital. Said authority and responsibility shall include, but shall not be limited to, the establishment, promulgation and enforcement of rules, regulations, and policies, the upkeep and maintenance of all property, the administration of all financial affairs, the maintenance of separate banking arrangements, the execution of all contracts, the purchase of supplies and equipment,

9

and the employment, supervision, compensation and discharge of all personnel including a Hospital Administrator.

1953 Tenn. Priv. Acts 197, § 1. These Acts were amended in 1992:

> WHEREAS, the complexities of providing health care services in the current environment necessitate a clarification and restatement of the power and authority of the board of directors;
>
> BE IT ENACTED . . .
>
> SECTION 1. Section 13 of Chapter 846 of the Private Acts of 1947, is amended by adding the following additional language:
>
> The Board of Directors shall have the authority to acquire or lease real property, equipment and other personal property related to the business and affairs of the hospital, including medical office buildings, parking structures, real property, buildings and other facilities determined by the board to be appropriate for the operation of the hospital and the provision of health care services. **All property acquired by the board shall be acquired subject to the approval of the county legislative body and shall be held and owned in the same manner as the original property conveyed for establishment of the Bradley County Memorial Hospital under Chapter 846 of the Private Acts of 1947, as subsequently amended.** (Emphasis added.)
>
>           \*    \*    \*
>
> SECTION 2. Section 14 of Chapter 846 of the Private Acts of 1947, is amended by adding the following additional language:
>
> Any revenues derived from operation of the hospital in excess of (1) operating expenses and (2) amounts required for the retirement of any bonds issued by Bradley County for the benefit of the hospital **shall be used for future hospital capital projects and the provision of health care services to indigent persons.** (Emphasis added.)[5]
>
>           \*    \*    \*
>
> SECTION 4. This act shall have no effect unless it is approved by a two-thirds (2/3) vote of the county legislative body of Bradley County . . . .

1992 Tenn. Priv. Acts 206 § 1, 4.

---

[5]To emphasize the distinction between the respective Private Acts: In *Eye Clinic,* the Private Act merely *authorized* Madison County to appropriate funds to commence operations and pay operating deficits; *it was not obligated to do so.* This factual and legal conclusion essentially controlled the disposition of the case. But in the case at Bar, the Private Act, unlike the Madison County Private Act, clearly onerates and obligates Bradley County, which pledges its full faith and credit and its taxing power to the payment of the bonds. No discretion is allowed.

**IV**

Because plaintiffs argue that County Hospital could not enter into a partnership venture with the Alliance without the approval of Bradley County, whereas defendants assert the independence of County Hospital from County intervention, much evidence was introduced at trial with regard to the degree of financial independence from Bradley County the County Hospital actually maintained prior to and during the initiation of the soon-to-be-contested Alliance projects. Numerous course-of-business documents in evidence effectively describe the relationship:

Excerpt from Comprehensive Annual Financial Report, Bradley County, Tennessee, For The Year Ended June 30, 1996.
> Individual Component Unit Disclosures . . . Bradley County's Board of Commissioners must approve all long-term debt issues of the hospital. **Bradley County would be responsible for this debt in case of default by the hospital.**

Excerpt from Pershing & Yoakley Independent Auditors' Financial Statement for Bradley County Memorial Hospital, June 30, 1996.
> Bradley County Memorial Hospital is a not-for-profit general short-term health care provider which serves Cleveland, Tennessee and surrounding areas. The Hospital is a component unit of Bradley County, Tennessee, which is considered the primary government unit . . . . The Hospital has a 51% membership in Ocoee Health Alliance (the Alliance), a Tennessee mutual benefit corporation formed for the purpose of providing a comprehensive provider network and managed care system to businesses and others in the Hospital's service area. The remaining 49% membership interest is comprised of eligible physicians licensed to practice in the state of Tennessee and with active staff membership on the medical staff of the Hospital.[6] During 1996 and 1995, the Hospital paid membership dues of $51,946 and $54,392, respectively to the Alliance. In addition, during 1996 the Hospital paid for certain expenses related to the Alliance. Other current assets at June 30, 1996 include $156,296 from the Alliance for payment of such expenses.

Letter from Mike Callaway, Attorney for County Hospital, to Bradley County Executive, in response to her inquiry as to the Hospital obligating County funds, July 18, 1996.

---

[6]The Charter for the Alliance provides, in part: "Upon the dissolution of the Corporation, the Board of Directors, after making provision for the payment of all of the liabilities of the Corporation, shall distribute all of the assets of the Corporation to its members . . . ."

. . . you will recall in 1995, in response to a request to the Attorney General for an opinion regarding the authority of the Hospital's Board of Directors to borrow funds from private sources, General Burson opined **" . . . Bradley County [is not] liable for a debt incurred by the Bradley County Memorial Hospital Board of Directors without the consent of the County Commission or the County Executive."** In any case, the Board and administration are convinced Bradley Memorial has the financial capacity and resources to perform its obligations under the Ground Lease Agreement, else the Hospital would not have executed it.

Minutes of Bradley County Hospital Board of Directors, Oct. 28, 1996.

Jim Whitlock, Hospital Administrator, announced that his term as President of the Tennessee Hospital Association would end at its next meeting. He also reported that "originally Bradley Memorial Hospital was a 51% owner in the joint venture with Ocoee Health Alliance [April 1995]. Since the Private Act has been revised and no longer requires the hospital to be 51% owner in joint ventures, Mr. Whitlock requested that the Board authorize the Ocoee Health Alliance bylaws to be changed to allow a 50-50 joint venture ownership. Motion passed unanimously."

SunTrust Bank - In-House Loan Offering Memorandum from Recommending Loan Officer, for Loan of $8,500.00 to Bradley Building LLC, December 10, 1996.

The lease is structured so Bradley agrees to assume the debt or pay it off in case of default . . . The strength of this deal is, obviously, the Bradley lease. Bradley's financial condition is very strong . . . Among the strengths of the deal are: (1) Bradley's overall financial condition, **Bradley County's A1 bond rating. . .**

Letter from Jeffrey Ivey, Regional President, SunTrust Bank, to Michael Callaway, Attorney for County Hospital, January 31, 1997:

I have enclosed for your review the documents that we will be asking Bradley Memorial Hospital to execute in conjunction with the $8.5 million construction/permanent loan to Bradley Building, LLC . . . The Credit Support Agreement was created because of the **overall reliance on the Hospital for the debt repayment. Our underwriting of the loan request was based on the Hospital's ability to make the required lease payments.**

Letter from Michael Callaway, Attorney for County Hospital, February 24, 1997, to David R. Evans, Attorney for SunTrust Bank: (in a different forum, taking a position opposite from that which he takes as counsel for the Hospital in this action)

. . . I have consulted with the Hospital and must advise [you that] Bradley Memorial cannot approve that portion of Section 3 of the document wherein it is required to accept possession of the building prior to completion, and **further is constitutionally prohibited from executing and agreement that, in effect, guarantees repayment of credit extended to a private party** as is required of

12

the Hospital in Section 18 of the Agreement in the event of a default. (Emphasis added.)

Excerpt from Letter of Cameron Sorenson, Southeast Venture Corporation (purchaser of the project lease when SunTrust threatened to hold Hospital in default), to Craig Taylor, Assistant Administrator, Bradley County Memorial Hospital, March 6, 1997.

> . . . after reviewing the potential reduction in rent if Galen (a private physician practice) were to elect not to accept an ownership interest in Bradley Building, LLC . . . as you and I discussed, it could create some issues with respect to Fraud and Abuse statutes if the Hospital were to redistribute Galen's forgone ownership to other physicians.

Affidavit of Jim Whitlock, August 27, 1997.

> The plaintiffs have alleged ". . . Bradley County Memorial Hospital has also unconstitutionally extended credit to Bradley Building, LLC, in violation of Section 29 of Article II of the Tennessee Constitution by guaranteeing the financing of Bradley Building's medical office building through entering into a Master Lease . . ." As a result of that allegation, the lender for the medical office building, SunTrust Bank, has questioned the validity of the lease and, therefore, its prospects of being repaid on its loan with the result it has declined to fund the developer's most recent draw requests . . . the Bank requested that the Hospital, in effect, "guarantee" the loan. That request was rejected by the Hospital. Affiant is informed and believes the same documents were also submitted to the County Executive for execution on behalf of Bradley County, but were likewise rejected.

Court-Ordered Trial Brief of Amicus Curiae James Webb, Attorney for Bradley County, filed October 27, 1997.

> The Court is no doubt aware that considerable controversy regarding Bradley County Memorial Hospital and certain of its recent actions, as well as to what its future status should be, exists among Bradley County's officials and citizenry . . . . **Bradley County Memorial Hospital, unlike similar institutions which are owned by "Authorities" or other independent corporate entities, has no separate existence from Bradley County itself.** This is quite evident from the manner in which the Hospital's site was acquired in 1949 and the form in which its Board of Directors was established in 1947 . . . . "Bradley County Memorial Hospital" is without independent existence and is but an alter ego of "Bradley County" itself - - a fortunate circumstance, for otherwise the validity of some 22.5 million dollars of bonds issued by the County for the benefit of the Hospital, along with another 2.5 million dollar bond issue now in process, might well be called into question . . . . The "Master Office Lease Agreement" which was assigned by Bradley Building, LLC, to SunTrust Bank to secure the $8,000,000.00 loan for the office building to be leased entirely by Bradley County Memorial Hospital - - in truth, as previously noted, Bradley County itself - - is a "hell or high water lease" as described by the attorneys who prepared it for the lender . . . it amounts to no more than a barely

disguised absolute guaranty of repayment of SunTrust Bank's loan to Bradley Building, LLC. This conclusion is made inevitable by the content of certain documents indicating that the bank looked solely to the credit-worthiness of Bradley County in evaluating the prospects of repayment of the loan . . . Before the credit of Bradley County (through its alter ego, "Bradley County Memorial Hospital") was loaned in aid of Bradley Building, LLC, the assent of three-fourths of the qualified voters of Bradley County should have been first secured through an election. **Even Bradley County Commission, itself, which is directly elected by the voters of the County and directly answerable to all of its citizens, could not have entered into the arrangement concerned in this case without a referendum.** (Emphasis added.)

Affidavit of Donna Hubbard, County Executive for Bradley County, October 29, 1997. The Documents attached hereto as Exhibit A to this affidavit are true and exact copies of excerpts from the official offering documents for the 1990 bond issue of Bradley County, Tennessee in which Bradley County issued $6,840,000.00 million in hospital revenue and tax improvements bonds, Series 1990. These bonds were bonds of Bradley County to which, insofar as they pertain to Bradley County Memorial Hospital, **pledged the ad valorem taxing power of Bradley County to the repayment of said bonds** should the revenues of Bradley County Memorial Hospital be insufficient to make the payments required by the bonds . . . I have reviewed and directed the review of Bradley County's payment history of its bonds issued on behalf of Bradley County Memorial Hospital. My review of Bradley County's payments on those bonds establishes that**, prior to 1993, Bradley County itself made the principal and interest payments on its bonds issued on behalf of Bradley County Memorial Hospital.**

Excerpt from Bradley County, Tennessee Series 1990 Bond. SECURITY: The Bonds, as to both principal and interest, shall be payable primarily from and secured by a pledge of the net revenues to be derived from the operation of the Hospital subject to any prior pledges of such revenues . . . . **The Bonds will also be payable from unlimited ad valorem taxes to be levied in all taxable property within the corporate limits of the County. For the prompt payment of principal of, premium, if any, and interest on the Bonds, the full faith and credit of the County are irrevocably pledged.** The Bonds will not be obligations of the State of Tennessee.

Considering the funding relationship between the county and the hospital

as shown by the Bradley County Private Acts, along with the overwhelming

14

evidence that the County has been fully obligated for the hospital's debts, we find that the partnership ventures engaged in by County Hospital and the private Alliance in this case amount to ultra vires acts under the Bradley County Private Acts and an unconstitutional application of the Private Act Hospital Act of 1996, under Art. II, § 29 of the Constitution of Tennessee. It is our duty to adopt a construction which will sustain a statute and avoid constitutional conflict if any reasonable construction exists that satisfies the requirements of the Constitution. *Davis-Kidd Booksellers, Inc. v. McWherter,* 866 S.W.2d 520 (Tenn. 1993), citing *State v. Sliger,* 846 S.W.2d 262, 263 (Tenn. 1993); *State v. Lyons,* 802 S.W.2d 590, 592 (Tenn. 1990); *Shelby County Election Comm'n v. Turner,* 755 S.W.2d 774, 777 (Tenn. 1988); *Kirk v. State,* 126 Tenn. 7, 10, 150 S.W.2d 83, 84 (Tenn. 1911). *See also, Smith v. Schneider,* No. 02A01-9608-CH-00193 (Tenn. App. December 11, 1996); *Barry v. Wilson County,* 610 S.W.2d 441 (Tenn. App. 1980).

As stated, we find that the trial court correctly analyzed the facts and circumstances and correctly determined that under those facts and circumstances, County Hospital functions as an agent and arm of Bradley County. Further, applying the constitutional limitations set out in Art. II, § 29, the court properly enjoined County Hospital from participating in those or any other partnership ventures with the private Alliance which obligate County funds without first conducting a County referendum as constitutionally required.[7] We find that under these facts and circumstances, the constitutional requirement for prior approval of the county by vote of its citizens exists irrespective of any rights

---

[7]In so holding, we acknowledge the argument presented in the amicus brief of the Tennessee Hospital Association and Hospital Alliance of Tennessee, Inc.:

> The key then is not whether the taxing power *can* be used at all in support of the entity - as in the Eye clinic case [in which] the Western Section found that the possibility that the county or city could tax was insufficient - but whether taxing power *has* been used in support of a particular project at issue.

While we are not convinced of the soundness of this argument, we need not decide, since the proof is abundant that in this case, Bradley County Hospital and the private physicians' Alliance ignored the constitutional restrictions and obligated County funds in mixed private-public projects without vote of Bradley County citizens.

granted to Private Act Hospitals in general under T.C.A. § 7-57-601, et seq. That part of the trial court's judgment so ordering is affirmed.

<strong>V</strong>

Finally, the appellants argue that the terms of the Order of Final Judgment and Permanent Injunction entered by the Chancellor are too broad and imprecise and unduly restrict and interfere with County Hospital's operation. Appellants point out that the injunction "prohibits the hospital from being a member of organizations such as the Tennessee Hospital Association, or the American Hospital Association, or even the local Chamber of Commerce, since all of them, though non-profit in nature, have members - probably even a majority of members - who are "non-governmental entities."

We must agree. We therefore narrow the injunction to provide that Bradley County Memorial Hospital is hereby enjoined from entering into any business transactions with private businesses or individuals which obligate County Funds unless authority is granted by vote of the citizens of Bradley County in a referendum, as required by law.

The judgment of the trial court is affirmed as modified. Costs are assessed to the parties evenly.

_____
William H. Inman, Senior Judge

CONCUR:


_____
Houston M. Goddard, Presiding Judge


_____

Charles D. Susano, Jr., Judge