30 F.3d 133
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Noreen McBRIDE, Plaintiff-Appellant
v.
VILLAGE OF MICHIANA; Elizabeth O'Donnell, individually and
as Clerk of the Village of Michiana, former Assistant Clerk
of the Village of Michiana, former President of the Village
of Michiana, former member of the Village of Michiana and as
former President Pro Tem of the Village Council of the
Village of Michiana; Kathleen Roberts, individually and as
former President of the Village of Michiana and as a member
and former President Pro-Tem of the Village Council of the
Village of Michiana; Kenneth Books, individually and as a
Police Officer of the Village of Michiana; Marianne
Gosswiller, individually and as former Chairperson of the
Zoning, Planning and Environmental Commission of the Village
of Michiana; Mary Ann Johnson, individually and as a former
member of the Village Council of the Village of Michiana and
as a former member of the Zoning, Planning and Environmental
Commission of the Village of Michiana; Gertrude Peterson,
individually and as former Clerk of the Village of Michiana;
Richard Gosswiller, individually, and as former President
of the Village of Michiana and as a former member of the
Village Council of the Village of Michiana; and Harvey
Kemp, individually and as a former member of the Zoning,
Planning and Environmental Commission of the Village of
Michiana and as former acting Temporary Building Inspector
of the Village of Michiana, Defendants-Appellees.
 No. 93-1641.
 United States Court of Appeals, Sixth Circuit.
 July 28, 1994.
 
 Before: MILBURN and NELSON, Circuit Judges; and COOK, Chief District Judge.*
 PER CURIAM.
 
 
 1
 The Plaintiff-Appellant, Noreen McBride, appeals the decision of the district court which dismissed her Complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, we reverse and remand to the district court for further proceedings that are consistent with this opinion.
 
 
 2
 * Noreen McBride is a reporter for several news reporting agencies, including the New Buffalo Times, the South Bend Tribune, and the radio station WEFM. For a number of years, she reported news events relating to the Village of Michiana in Berrien County, Michigan. However, some of her articles were perceived by the individual Defendants, all of whom were Michiana officials, to have been extremely inaccurate and politically embarrassing to them.[1] It is this perception by the Defendants, and their subsequent actions, that form the basis of the conflict between the parties.
 
 
 3
 McBride first asserts that some of the Defendants[2] repeatedly called her employers in an effort to discourage them from using her as a reporter to cover the news activities in Michiana. She contends that on one occasion, Roberts, Johnson, and Gosswiller[3] threatened to boycott the New Buffalo Times and attack its circulation base. These officials eventually placed an advertisement in the Harbor Country News which encouraged its readers to cancel their subscriptions to the New Buffalo Times.
 
 
 4
 On a separate occasion, another Defendant, Kenneth Books, a Michiana police officer, acting as an official representative of the Village, contacted the publisher of the New Buffalo Times in an effort to dissuade him from assigning McBride as a reporter to the meetings of the Village Council because the Police Department could not guarantee her physical safety. The phone call was reportedly made at the behest and in the presence of at least two members of the Village Council or the Village Zoning, Planning and Environmental Commission.
 
 
 5
 McBride contends that between 1990 and 1992, Defendants Gosswiller, Elizabeth O'Donnell, an officer of the Village Council, Gertrude Peterson, the Village Clerk, and several other unnamed Michiana employees violated the Freedom of Information Act of Michigan by (1) refusing to make some public documents available to her, (2) assessing inflated costs for the reproduction of public information, (3) charging her with unreasonable prices for the sole purpose of viewing a public document, (4) deliberately delaying the delivery of public documents without just cause, and (5) insisting that she submit a written request prior to viewing or obtaining a municipal document, even though oral requests are sufficient under state law.
 
 
 6
 In June 1990, Defendant Henry Kemp, the Village Building Inspector and a member of the Zoning, Planing, and Environmental Commission, required all of the members of the press who were present at a meeting of the Village's Zoning, Planning and Environmental Commission, including McBride, to stand and identify themselves. Two months later, he threw a chair toward McBride and other members of the press at a public meeting. Later that year, O'Donnell (1) instructed a municipal employee not to talk to McBride and (2) encouraged a newly appointed election inspector to terminate an interview with her.
 
 
 7
 McBride maintains that O'Donnell, Roberts, Gosswiller and Richard Gosswiller, also a Village official, verbally abused her in public and during public meetings. She also alleges that Peterson ordered her to leave the press table during a public meeting of the Michiana Council. In an apparent demonstration of her support for the Village Clerk's directive, Carol Nagy, one of the members of the Council, informed the general public that the meeting would not begin until McBride left the premises. As a point of emphasis, Books threatened to arrest or physically remove McBride if she did not leave the meeting room on her own volition. Prior to the next meeting, the press table was removed from the Council meeting room. Finally and in an unrelated matter, she contends that Richard Gosswiller, while serving as the Village President, deliberately destroyed a variety of municipal documents expressly for the purpose of keeping her from obtaining access to them.
 
 
 8
 Relying upon the First and Fourteenth[4] Amendments and 42 U.S.C. Sec. 1983, McBride initiated a lawsuit in which she sought injunctive relief against, and monetary relief from, the Defendants whom she contends had conspired to (1) interfere with her right to free speech, (2) hinder freedom of the press, and (3) retaliate against her for unfavorable reporting of municipal affairs.[5] On April 5, 1993, the district court granted the Defendants' motion to dismiss, finding that McBride had failed to set forth any cognizable claim under the United States Constitution.[6]
 
 
 9
 On appeal, McBride argues that the Village officials have undermined the freedom of the press, in that their retaliatory actions against her have threatened the collection, as well as the dissemination, of the public news. She complains, inter alia, that the district court erroneously failed to evaluate the Defendants' activities as a whole, which would clearly demonstrate their collective desire to impede the future exercise of her First Amendment freedoms.
 
 II
 
 10
 The dismissal of an action pursuant to Fed.R.Civ.P. 12(b)(6) is a question of law that is subject to de novo review. G.M. Engineers & Assoc., Inc. v. West Bloomfield Township, 922 F.2d 328, 330 (6th Cir.1990) (quoting Dugan v. Brooks, 818 F.2d 513, 516 (6th Cir.1987)). Moreover, dismissals of complaints in which claims under civil rights statutes have been asserted will be "scrutinized with special care." Brooks v. Seiter, 779 F.2d 1177, 1180 (6th Cir.1985). It is well settled that in evaluating the merit of a dispositive motion, the trial court must assume all material allegations within the Complaint to be true and examine its contents in a light that is most favorable to the plaintiff. Ana Leon T. v. Federal Reserve Bank, 823 F.2d 928, 930 (6th Cir.), cert. denied, 484 U.S. 945 (1987). However, neither legal conclusions nor unwarranted factual inferences constitute material allegations, and, hence, we are not obliged to accept them as true. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir.1987). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); see Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "Although this standard for Rule 12(b)(6) dismissals is quite liberal, more than bare assertions of legal conclusions is ordinarily required." Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir.1988). If the plaintiff is to overcome a dispositive motion, the complaint must contain direct or inferential allegations.
 
 
 11
 Section 1983 of Title 42 creates a private cause of action under which local governments can be subjected to liability when constitutional deprivations occur. Monell v. Dep't. of Social Servs., 436 U.S. 658, 690 (1978). This statute "provides a remedy for deprivations of rights secured by the Constitutions and laws of the United States" when the tortious activity takes place under color of state law. Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982). "The purpose of Sec. 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, --- U.S. ----, 112 S.Ct. 1827, 1830 (1992). In order to state a claim under Sec. 1983, a plaintiff must allege that (1) she was deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person who was acting under the color of state law. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155-56 (1978); see also Leatherman v. Tarrant County Narcotics Unit, --- U.S. ----, 113 S.Ct. 1160, 1163 (1993).
 
 
 12
 In support of her contention that she was deprived of a right under the United States Constitution, McBride relies upon the Fourteenth Amendment, which forbids all state actors from acting to "deprive any person of life, liberty or property without due process of law...." U.S. Const. amend. XIV, Sec. 1. To maintain these due process claims, McBride must assert facts which, if proven, would establish that the Defendants deprived her of a constitutionally protected property or liberty interest. Board of Regents v. Roth, 408 U.S. 564, 569-71 (1972).
 
 
 13
 In this case, McBride maintains that she was subjected to retaliatory measures by the Defendants who sought to prevent her from exercising her First Amendment rights to free speech and the freedom of the press. Hence, we must initially determine if the injury, about which McBride complains, amounts to a constitutional deprivation that is cognizable under Sec. 1983. See generally Martinez v. California, 444 U.S. 277 (1980); Crowder v. Lash, 687 F.2d 996, 1002 (7th Cir.1982) (damages recoverable under Sec. 1983 if plaintiff establishes defendants' actions were conducted under color of state law, resulted in deprivation of plaintiff's constitutional rights, and proximately caused constitutional violation).
 
 
 14
 * The district court, in finding that McBride's claims of defamation, interference with employment relationships, revocation of privileges, and interference with interviews were not cognizable as constitutional claims, implies that the deprivation of a property or liberty interest must accompany her injuries. However, the district court does not address the fact that there may be several configurations in a Sec. 1983 claim, such as an injury to a party's reputation that leads to the deprivation of a liberty or property interest. Paul v. Davis, 424 U.S. 693 (1976). Another example is the retaliatory conduct against a constitutionally protected activity that leads to an injury. See, e.g., Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977). The injury need not be a constitutional violation. For example, in Rakovich v. Wade, 850 F.2d 1180 (7th Cir.1988), cert. denied, 488 U.S. 968 (1988), the Seventh Circuit Court of Appeals approved the conclusion of the district court that an investigation, which had been conducted in retaliation for the publication of protected comments under the First Amendment, could be actionable under Sec. 1983. Id. at 1189.
 
 
 15
 Where, as here, the motive of the governmental actor is pertinent to the inquiry, the claimant, if engaged in a constitutionally protected activity during the relevant time period, need only show that the act of retaliation consisted of the deprivation of a non-trivial commodity.[7] See, e.g., Rutan v. Republican Party, 497 U.S. 62, 72 (1990) ("we find the assertion here that the employee petitioners had no legal entitlement to promotion, transfer, or recall beside the point); North Mississippi Communications Inc. v. Jones, 874 F.2d 1064 (5th Cir.1989), cert. denied, --- U.S. ----, 113 S.Ct. 184 (1992) (Mount Healthy applies to claim by newspaper that county board withheld advertising in retaliation for critical editorials and stories); Georgia Ass'n of Educators v. Gwinnett County School Dist., 856 F.2d 142 (11th Cir.1988) (denial of union dues checkoff privileges in retaliation for First Amendment activity is actionable); Howland v. Kilquist, 833 F.2d 639, 644 (7th Cir.1987) ("act in retaliation for the exercise of a constitutionally protected right is actionable under Sec. 1983 even if the act, when taken for different reasons, would have been proper") (quoting Buise v. Hudkins, 584 F.2d 223, 229 (7th Cir.1978), cert. denied, 440 U.S. 916 (1979)); Rakovich, 850 F.2d at 1189 (7th Cir.) ("an investigation conducted in retaliation for comments protected by the first amendment could be actionable under section 1983"); Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir.1986), cert. denied, 479 U.S. 1054 (1987) (proper Sec. 1983 claim stated where plaintiffs alleged "discrete acts of police surveillance and intimidation directed solely at silencing them").[8]
 
 
 16
 Moreover, any governmental action that falls short of direct prohibition but results in a chilling effect upon an individual's right of free speech may violate the First Amendment. Laird v. Tatum, 408 U.S. 1, 11 (1972), reh'g denied, 409 U.S. 901 (1972). Any state action that is designed to chill political expression is at the core of the First Amendment. Pickering v. Board of Education, 391 U.S. 563, 573 (1968). The Seventh Circuit Court of Appeals has determined that the effect of the acting party's conduct upon another individual's freedom of speech need not be great in order to be actionable because there is no justification for harassing people who seek to exercise their fundamental constitutional rights. Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982). Thus, in determining whether the conduct of the Village officials had any adverse effect upon McBride's constitutional rights, the test is whether their challenged activities are likely to chill the exercise of constitutionally protected speech. Laird, 408 U.S. at 13-14.
 
 
 17
 McBride has charged the Defendants with having made a threat to her safety, harassed her on the street, engaged in a campaign to force her employers to use other reporters, and verbally abused her during town meetings, all in retaliation for her publication of negative articles about them. Furthermore, she contends that future harm will occur as a result of the Defendants' outward hostility toward those persons who seek to assert their guarantees under the First Amendment. Under the above-mentioned standard, the harassment which has been attributed to the Defendants by McBride is sufficient to state a cause of action for retaliation, despite the contrary determination by the district court.
 
 B
 
 18
 We now turn to the question of whether the Defendants were acting under the color of state law at the time of their alleged acts of misconduct. It has been held by the Supreme Court that the involvement of a state official satisfies the state action element which is essential to a violation claim under the Fourteenth Amendment, whether or not the actions were lawful or officially authorized. Flagg Bros., 436 U.S. at 157 n. 5 (1978) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)). Generally, a public employee acts under the color of state law while serving in her official capacity or exercising her responsibilities pursuant to state law. West v. Atkins, 487 U.S. 42 (1988). The dispositive issue is whether the officials were acting as private individuals or if they were exercising their authority under state or local government. For example, the Supreme Court determined that an official's "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." Monroe v. Pape, 365 U.S. 167, 184 (1961), overruled on other grounds, Monell, 436 U.S. 658 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). See also West, 487 U.S. at 50 ("[i]t is firmly established that a defendant in a Sec. 1983 suit acts under color of state law when he abuses the position given him by the state").
 
 
 19
 In the present case, McBride contends that the Defendants were acting under color of state law at all times. She contends that the Village officials acted in their official capacities when they made calls to the newspapers and radio station. On the basis of the record, the parties were clearly functioning in their positions as Village officials during the meetings of the Michiana Council and its other municipal bodies. Even when the official terminated McBride's interviews of Village employees, this was the instruction from an individual who had acted as a representative of the municipal government. Accordingly, when all of the allegations are viewed in a light that is most favorable to McBride, it is our conclusion that the Defendants were acting in their capacities as Village officials. Given the sympathetic construction that is necessary when evaluating a motion under Fed.R.Civ.P. 12(b)(6), we find that McBride has asserted sufficient allegations to support a viable claim under Sec. 1983.
 
 C
 
 20
 During the hearing on the Motion to Dismiss before the district court, McBride asked for authority to amend the Complaint in the event that her claim was found to be legally deficient:
 
 
 21
 [I]f that's a mistake on our part, that we [request to be] given some leave to amend with regard to that; although, we don't think its necessary.
 
 
 22
 (Joint Appendix 90.) Federal Rule of Civil Procedure 15(a) states that leave to file an amended pleading "shall be freely given when justice so requires." The decision as to when justice requires an amendment is left to the discretion of the trial court judge, and is reviewed under an abuse of discretion standard. Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 982 (6th Cir.1991); see also Robinson v. Michigan Consolidated Gas Co., 918 F.2d 579, 591 (6th Cir.1990) (decision as to whether proposed claim is without merit, thereby making motion to amend futile, is "a decision that the district court alone is in a position to make"). Granting a motion to dismiss while a motion for leave to amend the complaint is pending is an abuse of discretion. See, e.g., Thompson v. Superior Fireplace Company, 931 F.2d 372, 374 (6th Cir.1991). Inasmuch as we have already determined that McBride's lawsuit was improperly dismissed by the district court, those remaining issues which relate to whether (1) her cursory comment relating to a proposed amendment of the Complaint constituted an adequate motion to amend, or (2) the district court should have granted the motion for leave to amend the Complaint prior to dismissing the action, need not be addressed for reasons of mootness.
 
 III
 
 23
 For the reasons that have been set forth above, the order of the district court is REVERSED and this action is REMANDED for further proceedings that are consistent with this opinion.
 
 
 24
 DAVID A. NELSON, Circuit Judge, concurring.
 
 
 25
 I fully agree that this case--petty though it may seem--ought not to have been dismissed under Rule 12(b)(6), Fed.R.Civ.P. I write separately, however, to note my understanding that many of the shenanigans attributed to the defendants hardly constitute violations of the United States Constitution.
 
 
 26
 Municipal employees have rights of free speech, for one thing, just as newspaper reporters do. Those rights may not always be exercised wisely, but courts are not arbiters of good taste or sensible politics, and Article III of the Constitution is not a charter for a conciliation service. Public officials are under no constitutional obligation to speak to the press at all, moreover, whether diplomatically or undiplomatically, and I hope that our opinion in this case will not be read as suggesting otherwise.
 
 
 27
 If Michiana police officers have made veiled threats with regard to the plaintiff's physical safety, on the other hand, and have done so on behalf of the village, or if Michiana has sought to exclude the plaintiff from public meetings, the plaintiff clearly has something to complain about. The truth of factual allegations such as these cannot be decided on a demurrer to the complaint, and I therefore concur in the court's judgment.
 
 
 
 *
 The Honorable Julian Abele Cook, Jr., Chief United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Examples of McBride's articles, which were found by the Defendants to have been grossly unfair, pertained to (1) a system that ostensibly encourages non-residents to vote in Village elections, (2) claimed violations of the Open Meetings Act by the Village Council and other Village agencies, and (3) alleged improprieties in the handling of public funds
 
 
 [2]
 McBride identified these Defendants as Kathleen Roberts, then the President Pro Tem of the Village Council, Marianne Gosswiller and Mary Ann Johnson, former Village officials, and Louis A. Desenberg, the Village Attorney
 
 
 [3]
 All references to Gosswiller are to Marianne Gosswiller unless otherwise indicated
 
 
 [4]
 In the Complaint, McBride alleged that her constitutional rights under the Fifth Amendment had been infringed upon by the Defendants. However, in her appeal, she states that her Complaint "sufficiently sets forth claims under the First and Fourteenth Amendments." (See Brief at 3.)
 
 
 [5]
 McBride also alleged state claims, over which she requested the court exercise its supplemental jurisdiction
 
 
 [6]
 The district court judge concluded that (1) McBride's allegations of defamation and interference with employment relationships did not support her claim of deprivation of constitutional rights, (2) the denial of the privilege of sitting at a special press table did not constitute a violation of her constitutional rights, (3) there is no constitutional right to conduct an interview with a public employee, and (4) there was no abridgement of her rights under the United States Constitution because the Michiana officials had not denied her access to any of its Village meetings
 
 
 [7]
 This is directly contrary to the Defendants' assertion that "whatever the actions are that they allege were taken in retaliation have to have some independent constitutional significance...." (Joint Appendix at 72.)
 
 
 [8]
 Although these cases involve the deprivation of a property right, they are analogous to claims of retaliation