RAYCOM NATIONAL, INC., d.b.a.
WOIO–TV and WUAB–TV,
Plaintiff

v.

Jane L. CAMPBELL, Mayor,
et al., Defendants

No. 1:04CV411.

United States District Court,
N.D. Ohio,
Eastern Division.

March 4, 2004.

John S. Kluznik, Sr., Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, Eric Hellerman, Covington & Burling, New York City, for Plaintiff.

Subodh Chandra, Thomas J. Kaiser, Natalie L. Peterson, Cleveland, OH, for Defendants.

## ORDER

OLIVER, District Judge.

On March 2, 2004, Raycom National d.b.a. WOIO–TV and WUAB–TV ("WOIO" or "Plaintiff") filed this action against Jane L. Campbell, Mayor of the City of Cleveland, ("Mayor Campbell") and the City of Cleveland (collectively, "Defendants") pursuant to 42 U.S.C. § 1983, alleging violations of the First and Fourteenth Amendments. Now pending before the court is Plaintiff's Motion for Temporary Restraining Order (ECF No. 3). The court held a hearing on Plaintiff's Motion on March 2, 2004. In ruling on the Motion, the court has taken into account the parties' respective briefs and the arguments made at the March 2 hearing. For the reasons outlined below, the Motion is denied.

## I. FACTS

WOIO is a television station in Cleveland, Ohio. On February 23, 2004, WOIO aired a story concerning Cleveland police officers who earned $84,000 for 2,300 hours of overtime while driving or escorting various members of Mayor Campbell's family around the City and on out-of-state trips. WOIO alleges that, as a result of this story, Mayor Campbell issued an "edict" prohibiting City officials and employees from speaking with or providing information to WOIO reporters, except through a formal records request under Ohio Public Records Law. WOIO maintains that since February 25, members of the Mayor's staff, City officials and employees, including members of the police and fire departments, have refused to provide information

to WOIO. According to WOIO, no other television organization in the area is subject to the Mayor's policy.

One example of the enforcement of the edict occurred on February 28, when WOIO reporter Jennifer Nix ("Nix") received a tip that a fatal fire had occurred in the City the night before. When Nix contacted her source at the fire department, an assistant fire chief, the assistant told Nix that he had been instructed by the Mayor's office not to provide any information to WOIO. On another occasion, WOIO correspondent Matthew Stevens ("Stevens") placed a telephone call to Edward Lohn ("Lohn"), Chief of the City of Cleveland Division of Police, and asked "whether and how recent reductions in the size of the Cleveland police force was going to affect Cleveland's war on crime." Tr. at 10. Chief Lohn responded that he was not permitted to speak with Stevens or give any information to WOIO. On one other occasion, a WOIO reporter went to City Hall and asked the Chief of Public Affairs Loma Wisham ("Wisham") whether the Mayor's office had ordered an investigation into the overtime story. Wisham responded that she had been instructed not to talk to WOIO reporters.

Mayor Campbell does not dispute that she has instructed members of her administration not to make statements to WOIO, except to fulfill the City's obligations regarding public record requests. She maintains that her decision was prompted by "irresponsible conduct" on the part of WOIO, primarily based on the way the Mayor's children have been treated and displayed by the station.

As a result of these events, WOIO filed this action, alleging violation of freedom of the press and equal protection. The Complaint seeks: (1) a declaration that the Mayor's edict is "unconstitutional and null and void"; (2) an injunction enjoining De-

fendants from enforcing the edict; and (3) an injunction requiring Defendants to "provide WOIO with the same access to City officials and employees and City information as [Defendants] provide to other members of the media and to the public." Comp. at 7–8.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions. When ruling on a motion for a temporary restraining order or preliminary injunction, a district court must consider and balance four factors: (1) whether the movant has a strong or substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the relief requested; (3) whether granting the relief requested will cause substantial harm to others; and (4) whether the public interest will be served by granting the relief requested. *See Memphis Planned Parenthood, Inc. v. Sundquist,* 175 F.3d 456, 460 (6th Cir.1999); *Schenck v. City of Hudson,* 114 F.3d 590, 593 (6th Cir.1997). Although the four factors are to be balanced in determining whether a temporary restraining order should issue, courts have often recognized that the first factor is traditionally of greater importance than the remaining three. *See Roth v. Bank of the Commonwealth,* 583 F.2d 527, 537 (6th Cir.1978).

## III. LAW AND ANALYSIS

### A. Likelihood of Success on the Merits

#### 1. First Amendment Claim

To establish a likelihood of success on the merits of its first claim for relief, WOIO argues that it has a constitutionally protected right to gather and report information about the operations of government, the conduct of public officials, and other matters of interest under the First

Amendment. *Richmond Newspapers v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). According to WOIO, Mayor Campbell may not prevent it from engaging in that right simply because she is displeased with WOIO's reporting. For the following reasons, the court finds that WOIO is unlikely to succeed in establishing that Defendants have violated its First Amendment rights.

#### a. *Snyder v. Ringgold*

While the collection of information is an important aspect of First Amendment freedoms, *see Branzburg v. Hayes,* 408 U.S. 665, 728, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the ability to collect information is not absolute. Although the First Amendment protects information gathering, it does not provide blanket access to information within the government's control. *Putnam Pit, Inc. v. City of Cookeville, Tenn.,* 221 F.3d 834, 840 (6th Cir.2000) (citing *Houchins v. KQED, Inc.,* 438 U.S. 1, 8, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978)). As a general rule, the First Amendment "does not guarantee the press a constitutional right of special access to information not available to the public generally." *Branzburg,* 408 U.S. at 684, 92 S.Ct. 2646.

The court in *Snyder v. Ringgold,* 40 F.Supp.2d 714 (D.Md.1999), examined these principles in a case with facts very similar to those at issue here. In *Snyder,* the plaintiff was a journalist who aired a story alleging that the Baltimore City Police Department had attempted to coverup a politician's connection with a local murder. Once the story aired, the plaintiff alleged that she began to experience difficulties in obtaining information from the defendant, the director of public affairs for the police department. *Id.* at 716. The plaintiff claimed that the director wrote to the plaintiff's employers stating that he would no longer talk to the plaintiff about

any story, stated that the public affairs department did not trust the plaintiff, and prevented the plaintiff from attending an upcoming interview. On other occasions, the plaintiff was prohibited from accessing information unless her requests were made in writing, and was heavily restricted in her ability to conduct interviews with local officials. *Id.* The plaintiff filed a § 1983 action, alleging that the defendant violated her First and Fourteenth Amendment rights. The district court granted the plaintiff's motion for injunctive relief, ordering that she be given access to information or interviews given to any other members of the media.

On the defendant's motion reconsideration,[1] the district court first noted that the Supreme Court has not decided "whether a constitutional 'right to equal access' for members of the press exists." 40 F.Supp.2d at 717. The court stated that the plaintiff had not been denied information "generally available or freely given to other members of the news media." *Id.* Rather, the defendant was merely exercising his right not to answer questions or meet with a member of the media. Relying on language from the court of appeal's opinion, the court concluded that the defendant's actions were analogous to the "commonly and widely accepted practice among politicians of granting an exclusive interview to a particular reporter" and "equally widespread practice of public officials declining to speak to reporters whom they view as untrustworthy because the reporters have previously violated a promise of confidentiality or otherwise distorted their comments." *Id.* at 718 (citing 133 F.3d 917, 1998 WL 13528 at *4).

Notably, the district court recognized that because no reporter has the right to access a particular interview, story or off-the-record statement, granting an injunction would likely result in preferential treatment to the plaintiff. This preferential treatment would "broaden the existing contours" of the First and Fourteenth Amendments, and would unfairly provide her with access that was not afforded to all other members of the media. *Id.* Thus, for example, if the police department were to grant an exclusive interview or provide off-the-record information to a reporter "who had proven particularly trustworthy in the past," the department would then be obligated to provide the plaintiff with that same interview or information, but not to any other member of the media. *Id.*

■ The court finds the reasoning in *Snyder* persuasive. Plaintiff does not allege that Mayor Campbell and the City of Cleveland are barring WOIO access to information generally available to other members of the media. For instance, WOIO does not assert that WOIO reporters are prohibited from attending press conferences,[2] or that Defendants have not provided WOIO reporters with press releases that have been disseminated to other television stations. Instead, Plaintiff complains that WOIO is no longer receiving interviews or statements off-the-record that it had been receiving before the February 23 story aired. As recognized in *Snyder*, however, the Mayor may exercise her right not to speak with certain reporters that, in her opinion, she views as untrustworthy or irresponsible. Furthermore, as a high-level executive with a

---

**1.** Originally, the district court denied the defendant's motion for summary judgment based on qualified immunity, and on appeal, the Fourth Circuit reversed. *Snyder v. Ringgold,* 133 F.3d 917, 1998 WL 13528 (4th Cir. 1998). In light of the court of appeal's ruling, the defendant filed his motion for reconsideration on the injunction issue.

**2.** In fact, Defendants assert that WOIO reporters were invited to attend the only press conference the Mayor has held since the overtime story aired.

broad range of discretionary authority, Mayor Campbell may make the determination that City administrators and employees may not comment on behalf of the City to members of the media. Additionally, the court agrees that the injunction Plaintiff seeks would have the effect of conferring preferential status on WOIO. The relief requested would require the Mayor and other City administrators or employees who grant interviews or give statements to certain members of the media to do the same for WOIO reporters, even though the Mayor views WOIO as irresponsible and untrustworthy. Thus, because WOIO is not being denied access to information available to the public generally, the court concludes that it is unlikely to succeed on the merits of its First Amendment claim.

### b. *United Teachers of Dade v. Stierheim*

To support its position, WOIO has relied on a line of cases holding that where members of the press are granted general access to official meetings, press conferences or facilities, government officials cannot exclude certain reporters or media organizations from obtaining that same access. *United Teachers of Dade v. Stierheim*, 213 F.Supp.2d 1368 (S.D.Fla.2002). In that case, the plaintiffs were members of a teachers union that published a monthly newspaper concerning local school board activities. Several articles published in the newspaper criticized the school's administration on policy issues. In order to facilitate media coverage of board meetings, the school board provided a press room for general media use. Ultimately, the school superintendent promulgated regulations that limited access to the press room to only "working media representatives" defined as "individuals employed by a newspaper or broadcast organization intended for general circulation." *Id.* at 1371. The practical effect of this regula-

tion was to exclude the plaintiffs, and only the plaintiffs, from using the press room.

In concluding that a preliminary injunction was appropriate, the court relied on *Consumers Union of United States, Inc. v. Periodical Correspondents' Assoc.*, 365 F.Supp. 18, 22–23 (D.D.C.1973), where the court held that it was unconstitutional for Congress, after deciding to provide press room facilities to magazines, to discriminate against one particular magazine based on the magazine's viewpoint. 213 F.Supp.2d at 1372–73. The *United Teachers* court held that eliminating the plaintiffs from a press room that had been voluntarily opened to members of the media was an improper denial of access to information. 213 F.Supp.2d at 1373. Finally, the court acknowledged that the defendants could not create a "separate but equal media room for particular-profession media" as this does not comport with the "requir[ement] that all news reporters be given equal access to places reserved for the media." *Id.* at 1373 n. 2. Thus, the defendants could not exclude the plaintiff from the media room generally made available to the media simply because the plaintiff advocated a particular viewpoint.

The facts of *United Teachers* are readily distinguishable from the facts of this case. In that case, the defendants made a press room generally available for media use and then attempted to specifically exclude the plaintiff from using it. Here, WOIO does not allege that a public forum has been made available to the media generally and that it has been denied access to that forum. Nor does WOIO contend that Defendants have selectively excluded its reporters from public meetings or press conferences, or that Defendants have created a "separate but equal" space for WOIO apart from the general media. Rather, as discussed above, WOIO maintains that it is no longer granted interviews or given off-

the-record statements as a result of its report. Because of this distinction, *United Teachers*, as well as the other cases WOIO relies on, are not dispositive. *See American Broadcasting Companies v. Cuomo*, 570 F.2d 1080, 1083 (2d Cir.1977) (ABC could not be excluded from post-election activities at campaign headquarters where other members of the press were granted access); *Sherrill v. Knight*, 569 F.2d 124, 129 (D.C.Cir.1977) (where White House press facilities had been made publicly available as a source of information for reporters, the White House could not exclude a reporter arbitrarily or for less than compelling reasons).

### c. *McBride v. Village of Michiana*

■ To the extent that WOIO raises a First Amendment retaliation claim, the court finds that it is not likely to succeed on the merits of this claim either. Plaintiff cites *McBride v. Village of Michiana*, 100 F.3d 457 (6th Cir.1996), as support for such a claim. A complete review of *McBride* as well as its subsequent history, however, reveals that the case not only fails to support Plaintiff's position but actually supports the conclusion that Defendants have not overstepped any constitutional boundaries in exercising their right not to speak with Plaintiff. In *McBride*, the plaintiff, a journalist for several news organizations, brought a § 1983 claim against numerous government officials, alleging that the defendants took actions against her based on her "less-than-glowing" reports on village issues. The plaintiff alleged that the defendants, among other things, repeatedly contacted her employers urging them not to allow her to report political news; requested that the plaintiff not be assigned to cover council proceedings; verbally abused her, instructed village employees not to speak with her; and threatened her. *Id.* at 459. In considering whether the defendants were entitled to qualified immunity on the plaintiff's First Amendment retaliation

claim, the court concluded that at the time of the alleged retaliation, "Supreme Court and Sixth Circuit precedent had clearly established that retaliation aimed at chilling fundamental rights was improper." *Id.* at 461. However, the court recognized that the defendants' "exercise ... of their own free speech rights cannot serve as the basis for imposition of liability." *Id.* Thus, on remand, the district court would have to determine which of the defendants' alleged acts were protected by the First Amendment and which were not. To provide some guidance to the district court in determining which acts might be considered unconstitutionally retaliatory, the court focused on those acts involving intimidation, harassment, and retribution:

> the district court should differentiate between those alleged improprieties by the defendants that constitute protected expressions of the defendants' own ideas and positions and those allegations that involve intimidation, harassment, and retribution directed toward [the plaintiff] solely to punish her for choosing to exercise one of the basic freedoms upon which our society is founded.

*Id.*

On remand, the district court evaluated each of the alleged retaliatory acts committed by the defendants. *McBride v. Village of Michiana*, 1998 WL 276139 (W.D.Mich. April 2, 1998). The court considered eleven categories of acts, ten of which are not relevant here because they involved physical abuse, threats or intimidation. In considering the plaintiff's allegation that the defendants retaliated against her by instructing village employees not to speak with her, the court concluded that summary judgment on behalf of the defendants was warranted because "the press has no right of access to officials and the Village was exercising its First Amendment right not to speak with

the press." *Id.* at *11. In reaching this conclusion, the district court relied on the Sixth Circuit's opinion in an earlier appeal in that case, where the court of appeals stated that "[p]ublic officials are under no constitutional obligation to speak to the press at all, ... whether diplomatically or undiplomatically." *Id.* (citing *McBride v. Village of Michiana,* 30 F.3d 133, 1994 WL 396143 at *6 (6th Cir.1994) (Nelson, J. concurring)).

The *McBride* holding demonstrates that by exercising their First Amendment right not to speak with a media organization they view as irresponsible, Defendants did not engage in retaliatory conduct prohibited by the First Amendment. Plaintiff has not alleged any act by Defendants that even approaches the type of retaliatory conduct deemed potentially unconstitutional by *McBride*—physical threats and abuse, intimidation and harassment. Moreover, as evidenced by the fact that Plaintiff has aired negative stories about Mayor Campbell and her administration since the overtime story aired, it is clear that Plaintiff's First Amendment rights have not been chilled by Defendants' actions. In sum, *McBride* makes clear that because government officials do not have an obligation to speak with members of the press, they cannot be forced to speak with members of the media they believe are untrustworthy. Therefore, the court concludes that Plaintiff does not have a reasonable likelihood of success on the merits of a First Amendment retaliation claim.

### 2. *Equal Protection Claim*

As to its second claim for relief, WOIO argues that by denying only WOIO reporters access to City officials, Defendants have violated its right to equal protection. Specifically, WOIO maintains that Mayor Campbell's edict does not apply to any other media organization and therefore constitutes unequal treatment in violation of the Fourteenth Amendment. For the following reasons, the court finds that WOIO's equal protection claim is not likely to succeed under a Fourteenth Amendment equal protection analysis.

■■■ The Equal Protection Clause protects against arbitrary classifications, and requires that similarly situated persons be treated equally. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). However, the Clause does not require absolutely equal treatment of all similarly situated persons, or the absolutely equal division of governmental benefits. *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). In the absence of a deprivation of a fundamental right or deprivation based on a suspect classification, equal protection requires differing governmental treatment of groups or individuals to be based on no more than a rational relationship to a legitimate state purpose. *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

■■■ Here, there is no dispute that WOIO is not a member of a suspect class; therefore, the court must determine whether it has been deprived of a fundamental right. A fundamental right is defined as a right that is explicitly or implicitly guaranteed by the Constitution. *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 33, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). The right to free speech under the First Amendment is a fundamental right. *Burns v. Bitnar,* 221 F.3d 1333, 2000 WL 876550 at *2 (6th Cir.2000). However, as discussed above, while the collection of information has been recognized as an important aspect of the First Amendment, the ability to gather information is not an absolute right, and "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the govern-

ment's control." *Houchins,* 438 U.S. at 15, 98 S.Ct. 2588. As the *Branzburg* court recognized, the First Amendment "does not guarantee the press a constitutional right of special access to information not available to the public generally." 408 U.S. at 684–85, 92 S.Ct. 2646.

■ While Plaintiff attempts to characterize the right at issue as a right to free speech, the right it alleges has been violated is the right to access information within the government's control. Because this right of access is limited and not absolute, the court concludes that it is not explicitly or implicitly guaranteed by the Constitution and thus is not a fundamental right. Therefore, the Mayor's policy need only bear a rational relationship to a legitimate state interest. *City of Cleburne,* 473 U.S. at 440, 105 S.Ct. 3249. That is, only if the court can find no set of facts which could possibly support the distinction drawn by the government will it overturn state action. *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

■ According to Mayor Campbell, her policy of restricting WOIO's access to interviews and commentary is rationally related to the legitimate public interest of controlling the content of the City's speech. She contends that if she were not permitted to make such a decision, a government official would be "required to grant the same right of access to every media outlet regardless of whether the official has qualms about the trustworthiness of any particular outlet." Br. in Opp. at 9. The court agrees. The ability of the government to "control the content of its own speech in ways that it could never regulate or control the content of private speech" has been recognized as legitimate. *Snyder,* 133 F.3d 917, 1998 WL 13528 at *4 (citing *Rust v. Sullivan,* 500 U.S. 173, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991)). Consequently, the court concludes that the

Mayor's policy does bear a rational relationship to a legitimate state interest.

Thus, the court concludes that Plaintiff is not likely to succeed on the merits of its equal protection claim.

**B. Remaining Considerations**

Because the court has concluded that Plaintiff is not likely to succeed on the merits of its claims, the remaining three factors need not be extensively addressed. *See Gonzales v. National Bd. of Medical Examiners,* 225 F.3d 620, 625 (6th Cir. 2000) (a finding that there is no likelihood of success on the merits is usually fatal to awarding an injunction). However, for the reasons briefly discussed below, the court finds that these factors also do not warrant granting an injunction.

*1. Irreparable Harm*

To establish irreparable harm, WOIO relies on those cases holding that "even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *Newsom v. Norris,* 888 F.2d 371, 378 (6th Cir.1989) (citing on *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). Because the court has concluded that WOIO has failed to make a preliminary showing of infringement on its First Amendment rights, the *Newsom* holding is not dispositive. Additionally, WOIO does not dispute that any harm it might suffer as a result of Defendants' actions would be fully compensable by monetary damages.

*2. Substantial Harm to Others*

■ For the same reasons discussed above, issuing an injunction would impinge upon government officials' First Amendment right not to speak with the media. The Sixth Circuit has recognized that § 1983 liability may not be premised upon an individual's "proper exercise ... of [his

688

or her] own free speech rights." *McBride*, 100 F.3d at 462.

### 3. Public Interest

The court finds that this factor does not weigh in favor of either party.

## IV. CONCLUSION

Determining whether a government official has overstepped constitutional boundaries in reacting to a negative media report involves careful line-drawing and evaluation of the facts. Making such a determination in the context of a temporary restraining order—on the basis of procedures that are less formal and evidence that is less complete than in later stages of the litigation—complicates this court's task. In reviewing what has been presented thus far, however, the court concludes that regardless of the soundness of Defendants' policy decision to prohibit City of Cleveland employees from providing certain information to WOIO reporters or whether this court believes such a policy was the most appropriate response to the February 23 news report, WOIO has failed to demonstrate that it is likely to succeed in establishing that Defendants have violated its constitutional rights. WOIO does not dispute that it has been permitted to attend press conferences and has received press releases that have been disseminated to other television stations since the news report aired. Its Complaint stems from the fact that it is no longer receiving interviews or statements off-the-record that it had been receiving prior to the report. The Constitution, however, does not "guarantee ... a right of access to all sources of information within government control." *See, e.g., Houchins*, 438 U.S. at 9, 98 S.Ct. 2588; *see also McBride*, 30 F.3d 133, 1994 WL 396143 at *6 (Nelson, J., concurring) ("Public officials are under no constitutional obligation to speak to the press at all, ... whether diplomatically or undiplomati-

cally."). On the other hand, government officials do have a First Amendment right not to speak with members of the media they deem particularly untrustworthy or irresponsible. *See, e.g., Snyder*, 40 F.Supp.2d at 718. Accordingly, under the facts as currently presented, the court finds that WQIO is unlikely to succeed on the merits of its claims. Its Motion for a Temporary Restraining Order (ECF No. 3) is therefore denied.

The court hereby sets a two-week period of discovery, until March 19, 2004, for WOIO's preliminary injunction motion. WOIO's motion is due Monday, March 29, 2004; Defendants' response is due Thursday, April 8; and WOIO's reply is due Tuesday, April 13. A preliminary injunction hearing is set before Magistrate Judge Perelman for Friday, April 23, 2004, at 11:30 a.m. Magistrate Perelman will then issue a report and recommendation to this court.

IT IS SO ORDERED.